Kevin B. SAUCEDA, Appellant,

v.

The STATE of Texas.

No. 612–02.

Court of Criminal Appeals of Texas,
En Banc.

March 10, 2004.

Shawna L. Reagin, Houston, for Appellant.

Carmen Castillo Mitchell, Asst. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, in which PRICE, JOHNSON, HOLCOMB, and COCHRAN, JJ., joined.

Our former opinion is withdrawn and this opinion is substituted. Appellant Kev-

in B. Sauceda was tried by a jury, and convicted of aggravated sexual assault of a child. TEX. PENAL CODE § 22.021. At trial, the defense attempted to introduce the testimony of a CPS caseworker who interviewed the victim about the incident. The State argued that if such testimony were allowed, the State would be entitled to introduce, in its entirety, a videotape of the interview. Although the videotape contained numerous references to uncharged offenses, the trial court ruled that the State could introduce the entire tape into evidence if the caseworker testified, under the rule of optional completeness. TEX.R. EVID. 107. Defense counsel did not call the caseworker to testify. Appellant was convicted and sentenced to forty years imprisonment.

In an unpublished opinion, the Court of Appeals upheld the trial court's ruling. *Sauceda v. State*, No. 14–01–00408–CR, 2002 WL 977152, 2002 Tex.App. LEXIS 1526 (Houston, [14th Dist.] February 28, 2002)(not designated for publication). We granted review to determine whether the Court of Appeals erred by upholding the trial court ruling that simply asking a question for impeachment purposes rendered an entire videotaped interview of extraneous offenses admissible under the rule of optional completeness. We hold that the Court of Appeals' ruling was error, and we will reverse.

**Facts:**

In September of 1998,[1] appellant was shot in the head, leaving him in a coma for 21 days. On his release from the hospital, he went to live in Houston with his mother,

who at the time was also caring for three of appellant's nieces, M.S. (9 years old), B.S. (8 years old), and C.S. (12 years old). Although he eventually recovered sufficient motor control to walk with the assistance of a walker, at the time of the charged incidents (May and June of 1999), appellant was confined to a wheelchair, and needed assistance with basic functions such as feeding himself.

Over the Fourth of July weekend, 1999, appellant's sisters took appellant and his nieces to Baytown,[2] Texas for a family reunion. Returning late from the reunion, appellant's sisters decided to stay at a motel in Baytown, rather than driving back to Houston that night. They put appellant in a room by himself on the first floor, and took two adjoining rooms for themselves and the nieces on the second floor of the motel.

Before retiring, appellant asked whether one of his nieces could spend the night in his room with him. Appellant's sisters were alarmed by the request, and he was told that none of his nieces would stay with him. After returning to their room, appellant's sisters discussed appellant's request, and concluded that it indicated something amiss. They repeatedly questioned all three nieces. After initial denials, each niece stated that appellant had sexually assaulted her.

Upon returning to Houston the next day, appellant's sisters called the police. On July 7th, 1999, CPS caseworker Fiona Stephenson interviewed M.S. at the Children's Assessment Center. The interview was videotaped, and the statement given

---

1. The Court of Appeals opinion incorrectly notes that the shooting occurred in September of 1999, three months after the first alleged sexual assault. *Sauceda*, 2002 WL 977152 at *1, 2002 Tex.App. LEXIS 1526 at *1. However, the court apparently recognized that Mr. Sauceda was in a wheelchair and

unable to feed himself at the time of the charged incident. *Id.* at *1, at *2.

2. There is conflicting information in the record as to whether the reunion was in Baytown or Bay City, Texas. For the sake of consistency, we will call it Baytown.

by M.S. indicated that she had been sexually assaulted by appellant. Numerous references to alleged assaults on C.S. and B.S. were also recorded during the interview. Appellant was arrested on July 19th, 1999, and indicted for aggravated sexual assault of a child. Although he was originally indicted for offenses against all three of his nieces, the State decided to proceed against appellant on the offenses against M.S. only.

In March of 2000, appellant was found incompetent to stand trial, apparently because of the impairment he still suffered from the 1999 gunshot wound. In April 2000, he was found to be competent, and the case proceeded to trial in February 2001. At trial, M.S. took the stand and testified to two incidents of sexual assault by appellant. M.S. testified that during the first incident, which occurred in May of 1999, appellant called her into his room, and told her to take off her clothes. When she refused, he got into his wheelchair, went over to a dresser, took out a butcher knife, and threatened her with it. At that time, she complied with his demand, and he sexually assaulted her.

The second incident M.S. testified to occurred about a week before the family reunion. M.S. testified that appellant again called her into his room, where he was lying in bed. He told her to get into bed with him, which she refused to do. He then showed her a gun, which he had under the covers. She got into the bed with him, and he sexually assaulted her again.

On cross-examination, defense counsel asked M.S. who else she had told about the

butcher knife and the gun. M.S. initially testified that she did not tell her aunts, but she thought she had told the CPS caseworker who interviewed her. Because appellant believed that the caseworker's testimony would contradict M.S.'s statement, and perhaps undermine her credibility, this portion of M.S.'s testimony was especially significant to the defense. On further examination, M.S. testified that she did tell her aunts about the weapons. However, the aunts did not mention the weapons in their written statements to police, nor in their testimony at trial.

At the close of the State's case-in-chief, outside the presence of the jury, defense counsel indicated that he wished to call Fiona Stephenson, the CPS caseworker. Defense counsel stated that Stephenson would testify that during her interview, M.S. never mentioned the butcher knife or the gun. The State pointed out that there was no time during the interview when M.S. was specifically asked about the weapons. The defense conceded that Stephenson would also testify, if asked, that she did not directly ask M.S. about the weapons. The State argued that if Stephenson was allowed to testify to those matters, the State should be allowed to introduce the entire videotaped interview into evidence under Texas Rule of Evidence 107, the "rule of optional completeness."[3] Defense counsel explained that he was not seeking to introduce the video itself, because the video contained so many references to extraneous offenses (the uncharged assaults on the other two nieces). The following discussion ensued:

---

**3.** Rule 107 reads as follows:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or record-

ed statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

STATE: I don't think it's fair either to have him going into what [M.S.] talked about on the videotape and not be allowed to show the videotape.

DEFENSE: I think the reason it's a problem is, Judge, the only way you can show that something is not on the tape, if you're trying to show—

THE COURT: Is to show the whole tape.

DEFENSE:—Is to show the entire tape. If I get up there and show the jury 30 seconds here, 30 seconds there, the jury is going to be thinking, we know the interview lasted longer than 30 seconds, they are going to be thinking we are hiding something from them.

THE COURT: Of course, that's—that's kind of the way the rules work. How long is the tape?

DEFENSE: It's about 20 minutes, I believe. Let me look at my notes. It was hard for me to find a minute that it was clear they were talking exclusively about [M.S.] without some reference to we and us.

THE COURT: I mean, that's kind of a hard call, but I don't think it's fair for you to get the impeachment value without risking the rule of optional completeness.

The Court then ruled that the videotape would come in if Stephenson testified about the interview. Defense counsel made a brief statement on the record of what Stephenson would have testified to. The defense made a motion to dismiss, which the court denied, and the jury was brought back in. The defense rested without calling further witnesses or presenting evidence. The jury returned a verdict of guilty, and the judge imposed a sentence of 40 years imprisonment.

On appeal, appellant argued that the trial court erred in ruling that impeach-ment of M.S. allowed the State to offer evidence of extraneous offenses. *Sauceda v. State*, No. 14–01–00408–CR, 2002 WL 977152, 2002 Tex.App. LEXIS 1526 (Houston, [14th Dist.] February 28, 2002)(not designated for publication). The Court of Appeals ruled that the trial court had not erred:

> The court and all parties agreed playing the entire tape would be necessary to enable the jury to fully understand whether M.S. had lied at trial about appellant's use of a gun and knife. Under these circumstances, we cannot say that the trial court abused it's [sic] discretion in ruling the State would be allowed to play the entire tape if Ms. Stephenson testified.

*Id.* at *5, at *14. The Court of Appeals affirmed appellant's conviction and sentence.

**Arguments of the parties:**

Appellant now contends that the Court of Appeals erred by misinterpreting defense counsel's argument *against* admission of the videotape as *agreement* that playing the entire tape would be required if any portion of the conversation was discussed by Stephenson. Appellant also points out that the purpose of Rule 107 is to guard against confusion, distortion or false impressions arising from the introduction of part of a writing, tape, conversation, etc., out of context. *Patel v. State*, 856 S.W.2d 486 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Appellant asserts that the rule applies only after one party has introduced part of a tape, writing, conversation, etc., and not when, as here, the defense did not seek to admit any part of the video. *Washington v. State*, 856 S.W.2d 184 (Tex.Crim.App.1993). Finally, appellant cites cases holding that the omitted portions must be on the same subject. *See, e.g., Reynolds v. State*, 856 S.W.2d 547 (Tex.App.-Houston [1st Dist.] 1993, no

pet.); *Hoppes v. State,* 725 S.W.2d 532 (Tex.App.-Houston [1st Dist.] 1987, no pet.).

The State argues first that appellant has failed to preserve the error for appeal, because he never actually called Stephenson to testify, and the tape was never played for the jury. In response to the arguments set forth above, the State counters that Rule 107 allows the State a "right of reply" once defense counsel has "opened the door" by pursuing a subject that would ordinarily be impermissible for the State to raise. *Credille v. State,* 925 S.W.2d 112, 116 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *Jones v. State,* 963 S.W.2d 177, 182 (Tex.App.-Fort Worth 1998, pet. ref'd). The State contends that if defense counsel had introduced specific questions and answers from M.S.'s statement into evidence in an attempt to impeach her trial testimony, then the State would have been entitled to offer the entire statement. *Espinoza v. State,* 828 S.W.2d 53 (Tex.App.-Houston [14th Dist.] 1991), *aff'd* 853 S.W.2d 36 (Tex.Crim.App. 1993). Finally, the State reiterates the Court of Appeals' conclusion that defense counsel "agreed" that the only way he could show the jury that something was not on the tape was to show the jury the entire tape.

## Standard of Review:

■ The standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion. *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim.App.1998). If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000); *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Romero v. State,* 800 S.W.2d 539, 543–544 (Tex.Crim.App.1990).

## Discussion:

■ First we will address the State's contention that appellant waived the error by choosing not to call Ms. Stephenson after the court's ruling. The cases cited by the State in support of this proposition were decided in the context of the defendant's choice whether or not to testify. All of these cases hold that a defendant must actually have testified in order to preserve error on a trial court's ruling allowing the State to impeach the defendant with prior convictions. *Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); *Jackson v. State,* 992 S.W.2d 469 (Tex.Crim.App.1999); *Caballero v. State,* 919 S.W.2d 919, 923 (Tex.App.-Houston [14the Dist.] 1996, pet. ref'd). This is not such a case. In *Jackson,* this Court explained the difficulties raised by appellate review of cases in which the defendant chose not to testify:

> The Court would have been required to engage in the difficult task of speculating about (1) the precise nature of the defendant's testimony, (2) whether the trial court's ruling would have remained the same or would have changed as the case unfolded, (3) whether the government would have sought to impeach the defendant with the prior conviction, (4) whether the accused would have testified in any event, and (5) whether any resulting error in permitting impeachment would have been harmless.

*Jackson,* 992 S.W.2d at 479. None of these concerns would be applicable in this case, because the State did not seek to introduce the video tape to impeach Ms. Stephenson's proposed testimony, but argued instead that the mere fact of her limited testimony in response to the proffered question would trigger the automatic admission of the video in its entirety. The court ruled in favor of this argument

after the State had finished presenting its case, and just before the defense called Ms. Stephenson, the sole defense witness. It was unlikely that the judge would have changed her ruling after this time, as there was little left of the case to "unfold". Finally, unlike the defendant in a criminal case, it was not Ms. Stephenson's choice whether or not to testify. Rather than looking to *Luce, Jackson,* and *Caballero,* we believe it is appropriate to address the preservation of error in this instance under Rule 33.1 of the Texas Rules of Appellate Procedure.[4] *See also, Tucker v. State,* 990 S.W.2d 261, 262 (Tex. Crim.App.1999)("[W]hen the trial court rules against an appellant's request, objection, or motion, further action is generally not required to preserve a complaint for appellate review.") In this case, the requirements of Rule 33.1 have been met, and we therefore hold that appellant has preserved the issue for review.

Turning therefore to the other arguments advanced by the parties, the appellant is correct in asserting that the Court of Appeals took defense counsel's statement regarding the impossibility of admitting only part of the video tape out of context. Reviewing the trial transcript, it is clear that defense counsel was not agreeing that the entire tape should be admitted. His statement, in context, was that he could not introduce *any* of the videotape, because the references to un-

charged offenses were inextricable from the pertinent parts of the interview. Instead, he intended to bring Stephenson, a live witness, to testify to her recollection of one narrow subject area: whether there was any mention of the butcher knife or the gun during the interview.

■ Turning to the question of whether defense counsel's questioning of Stephenson would "open the door" to admission of the videotape, neither the cases cited by appellant nor those cited by the State are clearly dispositive of the issue.

At first reading, the case cited by appellant appears to be directly applicable to this case. *Washington,* 856 S.W.2d at 186–87. In *Washington,* defense counsel sought to impeach one of the State's witnesses by questioning the witness about his statements made during a pre-trial interview with a defense investigator. The interview in question, which the investigator had tape-recorded, contained statements that were inconsistent with the witness' testimony at trial. When defense counsel questioned the witness about the contradictory testimony, the witness admitted to making most of the prior inconsistent statements to the investigator. At no time did the defense request admission of the tape itself, either in whole or in part, nor did the defense attempt call the investigator to testify about the interview. During redirect examination of the wit-

---

4. Rule 33.1 states:

As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

ness, the State asked the court to compel production of the tape, over defense objections that the tape was protected work-product. The trial court admitted the entire tape-recording of the interview into evidence. The Court of Appeals held that the tape was properly admitted into evidence under Rule 107. We disagreed with the Court of Appeals:

> Although the contents of a tape are subject to the Rule of Optional Completeness, the rule is not implicated until such time as a party attempts to have a portion of it "given in evidence." TEX. R.CRIM. EVID. 107. Then, the adverse party is entitled to introduce into evidence the remaining parts of the "act, declaration, conversation, writing or recorded statement," or any related "act, declaration, conversation, writing or recorded statement" necessary to a full understanding of the evidence. *Id.* Clearly, the first requirement of Rule 107 is that matter "be given" in evidence. Failing that, there is no justification under the rule for allowing introduction of the entire matter.

*Washington,* 856 S.W.2d at 186.

In *Washington,* we held that admission of the tape was error because:

1) no mention of the tape was made during cross examination; 2) defense made no attempt to introduce the tape's contents into evidence; and 3) the witness was available to answer questions about the interview with the investigator. *Id.* at 186–87.

The situation in this case is similar in some ways to *Washington,* and distinguishable in others. In both cases the defense made no attempt to introduce the recording itself into evidence. In this case, as in *Washington,* a live witness was available to testify to matters contained in the recording. However, in this case, unlike in *Washington,* the existence

of the videotape was mentioned frequently during cross-examination. Also, in *Washington* the witness admitted to the inconsistencies between what he had told the investigator, and what he had testified to on the stand. Here, the defense committed M.S. to her testimony, and then sought to introduce the testimony of *another* witness to impeach M.S. The prior inconsistent statements in *Washington* were discrete portions of the interview. Here, the impeachment turned on the *absence* of a statement, rather than on the existence of any directly contradictory statement.

Finally, and most importantly, the *Washington* opinion mentions nothing about extraneous offense evidence on the tape recording. The defense objected to the tape's admission on the basis of the work product privilege, but there is nothing to indicate that the information on the tape in that case contained extraneous offense evidence which appellant asserts is contained on the videotape in this case.

The Court of Appeals case cited by the State, apparently contradicting the holding in *Washington,* involved the admission of a videotaped interview under the rule of optional completeness. *Credille,* 925 S.W.2d at 116–17. In that case, the defense sought to impeach the credibility of a child complainant by cross-examining the police officer who interviewed the complainant while investigating the case. During the cross-examination, defense counsel inquired about specific statements made by the complainant during the interview. On redirect examination, the State established that the statements came from an interview that had been videotaped, and moved successfully for admission of the entire videotape. The appellant in that case argued that the videotape should not have been admitted because he did not try to admit any portion of the videotape itself

into evidence. The Court of Appeals upheld the trial court's admission of the video:

> Rule 107, ... in its text, permits the introduction of other types of evidence to clarify the opponent's evidence.... Therefore, because appellant inquired into the videotaped conversation, ... the State was entitled to offer any other evidence that was necessary to make the conversation fully understood.

*Id.* at 117 (*internal citations omitted*). While this language implies a broad reading of Rule 107, the situation in *Credille* was different from the situation here in at least one important respect. The *Credille* defense pointed to *specific* statements made by the complainant during the interview which, taken out of context, could indeed have created "the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Id.* at 116, *citing Solano v. State*, 728 S.W.2d 428, 430–31 (Tex.App.-San Antonio, 1987, pet. ref'd). In this case, in contrast, there would be little danger of misleading the jury by presentation of statements taken out of context. The witness here would have testified that the specific subject of weapons was *never* raised during the interview, either by the complainant or by the interviewer. Playing the tape would not put such testimony into any "context."

The State's argument that the "opening of the door" would require the automatic admission of the entire videotape is completely without support.[5] The plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be "on the same subject" and must be "necessary to make it fully understood." TEX.R. EVID. 107. It is true that in order to prove that something is *not* mentioned during an interview, one would need to consider the entire interview. Arguably, under this logic, the entire interview would be "on the same subject" as the proposed testimony, *i.e.*, the absence of particular details. However, it is difficult to see how the entire videotape would be *necessary* to explain or to make the testimony understood. The testimony of the live witness would establish that the weapons were not inquired about and not mentioned by M.S. during the videotaped interview. The State never contended that the tape would impeach Stephenson's testimony, nor that her testimony would create confusion, distortion, or a false impression about the interview. In fact, if Stephenson had testified as defense counsel anticipated, the evidence on the video would have bolstered her testimony. On the other hand, if the video had been admitted, the references to uncharged offenses likely would have *created* confusion, rather than helping to dispel it.

This holding is consistent with our recent opinion in *Willover v. State*, 70 S.W.3d 841 (Tex.Crim.App.2002). In that case this Court was confronted with a similar

---

**5.** As we have explained under the predecessor of Rule 107, Article 38.24 of the Texas Code of Criminal Procedure:

> The state cites numerous cases in its brief in support of its proposition that when a defendant offers a portion of a conversation the state is authorized to show the entire conversation. Although some of the cited opinions do use such broad language, it appears that in fact the portions offered by the state were on the same subject gone into by the defendant, and were for the purpose of explaining the whole conversation on the same subject, as permitted by Article 38.24, supra. Thus, although those cases were properly decided, the overly broad statement that the whole conversation may be shown is not supported by the language of the statute and should not be relied upon in the future.

*Roman v. State*, 503 S.W.2d 252, 254 (Tex. Crim.App.1974).

situation, with one party seeking to introduce videotapes of interviews with a child victim into evidence. However, in *Willover* it was the defense that sought to introduce the tapes for impeachment purposes, not under Rule 107, but under various hearsay exceptions. The State objected, and the trial court ruled the tapes inadmissible because they could not be edited to eliminate irrelevant portions of the interview. We upheld the trial court's ruling:

> When a trial judge is presented with a proffer of evidence containing both admissible and inadmissible statements and the proponent of the evidence fails to segregate and specifically offer the admissible statements, the trial court may properly exclude all of the statements.

*Id.* at 847. Although *Willover* was not decided under Rule 107, the same principle applies here.

For the above reasons, we hold that the Court of Appeals erred by upholding the trial court's ruling that the tape would be admissible if appellant called Stephenson to testify.[6] In light of the information before the trial court, there is no theory of law that would require the introduction of the entire videotape into evidence without any showing of necessity by the State. As a witness to the interview, Stephenson could have impeached M.S.'s credibility by testifying to a single, narrow matter. Because the information on the videotape was in no way necessary to make that testimony fully understood, as required by Rule 107, the videotape would not have been admissible.

Accordingly, we reverse the decision of the Court of Appeals, and the cause is remanded to that court for a harm analysis.

WOMACK, J., concurred.

JOHNSON, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion, joined by KEASLER, and HERVEY, JJ.

JOHNSON, J., filed a concurring opinion.

I join the opinion of the Court. If it is true that error is not preserved in a situation such as this, despite timely objection, because the inadmissible evidence was not admitted, then error is also, by analogy,

---

6. Both in the Court of Appeals and in its brief to this Court, the State argued that appellant failed to get a definitive ruling from the trial court on his proffer, because defense counsel interrupted the trial court before she could rule.

We believe that the trial judge's statements show that she was doing more than just leaning toward ruling in favor of the State. *See Rey v. State*, 897 S.W.2d 333, 336 (Tex.Crim. App.1995)("While we require that a defendant's objections be specific enough to effectively communicate his complaint to the court, we are less stringent in our requirements of the trial court's ruling on an objection.")

Furthermore, we doubt that the trial judge would have allowed defense counsel to make his bill of exceptions and release the witness without comment if she had intended to rule

differently. An implied ruling can be inferred from the court's failure to contradict counsel. *See Davis v. State*, 104 S.W.3d 177, 180 (Tex.App.-Waco 2003) (defense counsel's offer of proof "for appellate purposes" and exception to the court's "ruling", when no ruling appeared on the record, combined with court's failure to contradict or correct was sufficient to show an "implied ruling").

We believe in this case that the judge's silence, in combination with the statements she made immediately before the interruption are sufficient to constitute an implicit ruling under *Gutierrez [v. State*, 36 S.W.3d 509, 511 (Tex.Crim.App.2001)]. *See also, Chappell v. State*, 850 S.W.2d 508, 510 (Tex.Crim.App. 1993); *Ramirez v. State*, 815 S.W.2d 636, 650 (Tex.Crim.App.1991); *Beebe v. State*, 811 S.W.2d 604, 605 (Tex.Crim.App.1991).

not preserved, despite timely objection, when admissible evidence is not admitted. Under this logic, a trial court may rule incorrectly with impunity merely by refusing to admit the proffered evidence, whatever its nature. If the incorrect ruling significantly affects the ability of either party to present its case, surely we do not wish to shield that incorrect ruling from review. Surely we do not want to force an appellant to choose between calling the witness and having the inadmissible inflammatory evidence admitted, to his probable detriment, or not calling the only witness who can testify about a substantive issue or an issue of mitigation.

In the case at bar, appellant chose not to call the CPS worker to impeach the complainant on the narrow issue of use of weapons because of the trial court's ruling that to do so would allow the state to present the entire taped interview, regardless of its connection to the narrow scope of the proposed impeachment. There was no other witness who could give the needed testimony. The tape contained much comment on extraneous offenses of an inflammatory nature. Thus caught between a rock and hard place, appellant's ability to present his defense was impermissibly impaired. Neither state nor appellant should be required to plead its case under such strictures.

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

The trial court could not have erred in admitting this evidence *because the evi-*dence was never admitted.* In its brief on discretionary review, the State cites *Jackson v. State*[1] for the proposition that error was not preserved because the complained of evidence was never admitted. The State is correct. In *Jackson,* the defendant requested that he be allowed to testify at the punishment phase of trial without being impeached on cross-examination with prior extraneous offenses.[2] The trial court denied his request to limit the State's ability to impeach in the event he testified.[3] Relying upon *Luce v. United States,*[4] we held that error was not preserved because the defendant did not in fact testify (and thus, was not impeached with extraneous offenses).[5] In *Luce,* the defendant complained about the trial court's refusal to foreclose impeachment with prior convictions in the event the defendant testified.[6] In declining to review the alleged error, the United States Supreme Court observed that reviewing the trial court's ruling was fraught with difficulty, requiring speculation about:

(1) the precise nature of the defendant's testimony, (2) whether the trial court's ruling would have remained the same or would have changed as the case unfolded, (3) whether the government would have sought to impeach the defendant with the prior conviction, (4) whether the accused would have testified in any event, and (5) whether any resulting error in permitting impeachment would have been harmless.[7]

This case is similar to *Jackson* and *Luce.* As in those cases, the defendant

1. 992 S.W.2d 469 (Tex.Crim.App.1999).
2. *Id.* at 479.
3. *Id.*
4. 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).
5. *Jackson,* 992 S.W.2d at 479.
6. *Jackson,* 992 S.W.2d at 479 (citing *Luce,* 469 U.S. at 39–40).
7. *Id.* (citing *Luce,* 469 U.S. at 41–42).

declined to introduce favorable testimony after the trial court indicated that the testimony would open the door to unfavorable evidence (involving the defendant's extraneous offenses). And, as in those cases, the unfavorable evidence was never admitted. Because the defendant did not introduce Stephenson's testimony, and as a result, the child's videotaped statement was never admitted, appellant has failed to preserve error for appellate review.

It is true that the State did not raise this particular preservation argument before the Court of Appeals although it raised a related preservation claim that the was rejected.[8] And it is also true that the State did not file a cross-petition. Nevertheless, preservation of error is a systemic issue that a first-level appellate court ought to raise on its own motion and one that a discretionary review court may choose to address if warranted by the circumstances.[9] There is no escaping that the Court's opinion holds to be inadmissible evidence that was never admitted— making this opinion advisory in nature. And, the procedural posture of the case renders problematic any attempts to review the merits or to conduct a harm analysis. We should either dismiss the petition as improvidently granted or hand down an opinion holding that error was not preserved. Because the Court does neither, I respectfully dissent.

---

**8.** The State claimed the trial court had not issued an adverse ruling because it issued a favorable ruling with regard to whether Stephenson could testify and issued no ruling on whether the videotape was admissible.

**9.** *Jones v. State,* 942 S.W.2d 1, 2 n. 1 (Tex. Crim.App.1997).