Opinion issued August 7, 2007










 





In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01130-CR






DAVID CLYDE BILLODEAU, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 1001543






CORRECTED OPINION (1) Appellant, David Clyde Billodeau, was charged by indictment with aggravated
sexual assault of a child, to which he pleaded not guilty. See Tex. Pen. Code Ann.
§ 22.021 (Vernon Supp. 2006). A jury found appellant guilty and assessed
punishment at 30 years' confinement.

 On appeal, appellant presents five issues. In his first through fourth issues,
appellant contends that the trial court erred by (1) excluding evidence of "other false
accusations and threats" made by the complainant "around the same time as the
accusations in the alleged offense, in violation of [appellant's] due process rights
under the Texas and United States Constitutions"; (2) limiting appellant's cross-examination of the complainant, "in violation of [appellant's] right to confront
witnesses under the United States Constitution"; (3) "excluding evidence admissible
under Texas Rule of Evidence 613(a) of prior inconsistent statements made by [the
complainant], in violation of [appellant's] due process rights under both the Texas
and United States Constitutions"; and (4) excluding evidence that the complainant
falsely accused appellant of having sexually assaulted another child. In his fifth
issue, appellant contends that the evidence was legally insufficient to support his
conviction because the State failed to show that J.B. was not appellant's spouse.

 We affirm.


Background

 In early 2003, the complainant, J.B., who is male and was then eight years of
age, had been spending weekends at the home of Robert and Edith Wolfe, close
friends of J.B.'s parents. Appellant, who is male and was then 34 years of age, had
been living with the Wolfes during that period. Over time, J.B. and appellant became
friends. In May of 2003, appellant was struck by a car while riding his bicycle. Upon
his release from the hospital, J.B.'s family invited appellant to live with them while
he recuperated. 

 J.B.'s father testified that appellant lived at the their home for two to three
weeks and then moved to an apartment in Channelview, where J.B. began spending
his weekends visiting appellant. J.B. testified that, one weekend in late July,
appellant took him to the Palms Motel in Baytown. At the motel, J.B. was lying in
bed on his stomach when appellant kissed him, removed J.B.'s clothing, and engaged
in sexual conduct with J.B. J.B. testified that he pushed appellant off of the bed, ran
into the bathroom and put his clothes on, and ran to the motel office. The office was
closed, so he returned to the room. J.B. testified that appellant threatened to kill him
if he told anyone. J.B. also testified that appellant drove him to McDonalds for
dinner, that they returned to the room and fell asleep, and that J.B.'s father picked J.B.
up from the motel at 7:30 the next morning. 

 Three days later, on July 29, 2003, J.B. told a neighbor, Marilyn Jordan, the
details of what had occurred at the motel, and Jordan called the police. J.B.'s father
testified that, when he arrived home from work that day and saw the police at
Jordan's house, he asked J.B. what was going on. J.B. became emotional and told
him what had occurred the prior weekend at the motel. 

 That evening, J.B.'s mother took J.B. to Texas Children's Hospital. Dr. Erin
Endom, a pediatric emergency physician at Texas Children's Hospital, testified that
she examined J.B. and that there were no abnormal physical findings. Dr. Endom
also testified that this was not unusual, given that three days had elapsed since the
incident. 

 The next day, Child Protective Services removed J.B. and his sister from the
their home and placed them into foster care, where J.B. remained for 11 months
before returning home in May of 2004. J.B.'s father testified that J.B. had been in
psychiatric care since the age of six and that, since returning from foster care, J.B. had
shown severe behavioral changes and demonstrated an intense fear of and anger
toward adults. 

 Appellant disputed that he ever accompanied J.B. to a motel and testified that
he could not have driven to a motel or to McDonalds, as J.B. alleged, because he did
not have a car during the summer of 2003. Appellant testified that he lived with 
J.B.'s family from the time of his release from the hospital after his bicycle injury to 
July 4, 2003, when, having received a settlement from the bicycle accident, he moved
back to Louisiana. It was appellant's testimony that, in late May or early June, while
living at J.B.'s home, he purchased a set of remote control cars for J.B. and that, when
J.B.'s parents insisted that appellant take the cars back, J.B. became enraged and
threw the cars at appellant. It was appellant's testimony that this incident sparked
J.B.'s allegations in the instant offense. 

 At trial, appellant unsuccessfully sought to admit the testimony of J.B.'s
neighbors, Nancy Kline and her adult son Nathan Kline, that J.B. had threatened to
falsely accuse them of molestation. By bill of exception, appellant elicited testimony
from Nancy that J.B. was at her house over a year after the events of July of 2003 and
had used foul language in front of her younger children. Nancy testified that, when
she grasped J.B. by the shoulders and scolded him, J.B. became enraged and stated,
with a smirk, "I am going to call the cops and tell them that you're molesting me." 
Nathan testified that, on an occasion in November of 2004, when he had refused to
allow J.B. to play with Nathan's younger siblings, J.B. threatened to tell his parents
that Nathan had molested him.



Limiting Cross-Examination

 In his second issue, appellant contends that the trial court erred by limiting his
"cross-examination of [J.B.], in violation of [appellant's] right to confront witnesses
under the United States Constitution, by prohibiting questions about prior accusations
and threats made by [J.B.] intended to impeach his credibility." 

 Specifically, on cross-examination, appellant sought to impeach J.B.'s
credibility by questioning him about his threats to falsely accuse Nancy Kline of
molestation, as follows:

 [Defense counsel]: Back earlier this year, do you remember an incident
where Nancy Kline took you aside and washed your
mouth out with soap?

 [State]: Objection. Relevance.

 [J.B.]: Yes.

 [Trial Court]: That's overruled. 

 [Defense counsel]: Do you know why she did that?

 [State]: Objection. Relevance unless it can be established.
And it calls for speculation.

 [Trial Court]: That's sustained.

 [Defense counsel]: Well, she washed your mouth out, didn't she,
because you had called your sister a b----?

 [State]: Objection. Relevance.

 [Trial Court]: That's sustained.

 [J.B.]: Yes.

 [Defense counsel]: Okay. Now after she washed your mouth out with
soap, isn't it true that you threatened to call CPS and
tell them that she had molested you?

 [State]: Objection. Relevance. 

 [Trial Court]: Sustained.

 A bench conference immediately followed, on the record, during which
appellant's counsel contended that he should be permitted to pursue this line of
questioning because

 [it was] highly relevant that [J.B.] made multiple accusations and
threatened people that he was going to go to CPS and tell them that he
had been molested whenever it is that he's not [sic] gotten mad; and I
can show this with my impeachment witnesses that this is, in fact, true. 
It goes to directly to the matter of credibility. It goes directly to matters
of the United States Constitution where I have a right under the
confrontation clause to look into these matters.


 The jury was excused and the trial court heard the proffered testimony, which
included questioning J.B. regarding Nancy and Nathan Kline's allegations, as
follows:

 [Defense counsel]: [J.B.], isn't it true that after Nancy Kline washed
your mouth out with soap, that you threatened to call
CPS and tell them that she had molested you?

 [J.B.]: No.

 [Defense counsel]: Okay. Do you recall at a--in the summer--last
summer, summer of 2004, going over to the Kline
house and wanting to see the two children to go out
and play?

 [J.B.]: Yes.

 [Defense counsel]: And Nathan was there and he told you that they
weren't home, but you knew they were home, didn't
you?

 [J.B.]: Yes.

 [Defense counsel]: Okay. And did that make you mad?

 [J.B.]: Yes.

 [Defense counsel]: Okay. And didn't you then say to Nathan that you
were going to go home and tell your mom that he
had molested you? 

 [J.B.]: No. 


 Appellant then reasserted his relevance and Confrontation Clause contentions. 
The trial court refused to admit the testimony on the ground that the accusations had
occurred over a year after the offense at issue.

 On appeal, appellant contends that, pursuant to Lopez v. State, 18 S.W.3d 220
(Tex. Crim. App. 2000), the exclusion of the proffered testimony violated appellant's
rights under the Confrontation Clause. The State contends that the evidence is
inadmissible pursuant to Rule of Evidence 608(b). See Tex. R. Evid. 608(b). 

A. The Law and Standard of Review

 The Sixth Amendment to the United States Constitution guarantees a criminal
defendant the right to be confronted with the witnesses against him. U.S. Const.
amend. VI. A primary interest secured by the Confrontation Clause is the right to
cross-examination. Lopez, 18 S.W.3d at 222. However, a trial court has broad
discretion to impose reasonable limits on cross-examination "to avoid harassment,
prejudice, confusion of the issues, endangering the witness, and the injection of
cumulative or collateral evidence." Id. In determining "whether evidence must be
admitted under the Confrontation Clause, the trial court should balance the probative
value of the evidence sought to be introduced against the risk its admission may
entail." Id.

 Rule of Evidence 608(b) provides, in pertinent part, that "[s]pecific instances
of the conduct of a witness, for purposes of attacking . . . the witness' credibility,
other than conviction of crime . . . may not be inquired into on cross-examination of
the witness nor proved by extrinsic evidence" Tex. R. Evid. 608(b).

 We review a trial court's ruling under the Rules of Evidence for an abuse of
discretion. Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). We
consider the ruling in light of what was before the trial court at the time the ruling
was made and uphold the trial court's judgment if it lies within the zone of reasonable
disagreement. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

B. Analysis

 In Lopez, Lopez was convicted of aggravated sexual assault of a child. 18
S.W.3d at 222. The only evidence of Lopez's guilt was the complainant's accusation. 
Id. at 225. At trial, Lopez unsuccessfully sought to introduce impeachment evidence
that the complainant had falsely accused his mother of physical abuse, in that she
allegedly threw the complainant against a washing machine two years prior to the
charged offense. Id. at 221. On appeal, Lopez contended that the evidence was
admissible under the Confrontation Clause, and the court of appeals reversed. Id. at
222. 

 On review, the Court of Criminal Appeals remanded to the court of appeals to
address the State's argument that the evidence was inadmissible pursuant to Rule of
Evidence 608(b). Id. On remand, the court of appeals held that, despite the
proscriptions of Rule 608(b), the Confrontation Clause demanded that the evidence
be admitted. Id. 

 On subsequent review, the Court of Criminal Appeals considered whether the
Confrontation Clause required it to "carve out a special exception to the Rules of
Evidence for sexual offenses," as other states had done. Id. at 223. While the Court
refused to create a per se exception to Rule 608(b) for sexual offenses, it
acknowledged "that the Confrontation Clause occasionally may require the
admissibility of evidence that the Rules of Evidence would exclude," as determined
on a case-by-case basis. Id. at 225. 

 The Court then considered whether such an exception applied to the case at
hand. Id. The Court balanced the probative value of the evidence Lopez had sought
to introduce against the risk its admission entailed. Id. The Court determined that,
because there was no evidence other than the complainant's allegations, Lopez had
a heightened need to impeach his credibility; however, the evidence that Lopez
sought to admit would not have achieved that goal because the prior accusation had
not been shown to be false and there had been no showing that the prior accusation
(physical abuse) and the charged offense (sexual assault) were similar. Id. at 225-26. 
The Court concluded that the evidence failed to have any probative value in
impeaching the complainant's credibility and there was high risk that the evidence
would unduly prejudice and confuse the jury. Id. at 226. The Court held that the trial
court properly excluded the evidence Lopez sought to admit because it was
inadmissible under Rule 608(b) and the Confrontation Clause did not mandate its
admissibility. Id.

 Conversely, in a pre-Lopez case, Thomas v. State, 669 S.W.2d 420, 423 (Tex.
App.--Houston [1st Dist.] 1984, pet. ref'd), this court held that the Confrontation
Clause mandated the admission of testimony by the complainant as to false
accusations. There, Thomas was convicted of aggravated rape of a child. Id. at 421.
At trial, Thomas had sought to admit testimony by the complainant that she admitted
to having, in the months prior to the charged offense, falsely reported to family
members and a neighbor two incidents of rape or attempted rape by strangers. Id. at
421-22. Thomas presented this testimony, as well as testimony by the complainant's
mother that the complainant had made the allegations and that the mother did not
believe her, by bill of exception. Id. This court held that, because the testimony of
the complainant and her mother showed that at least one of the prior accusations was
false, the trial court's refusal to allow the appellant to question the complainant as to
these matters before the jury amounted to a violation of the Confrontation Clause. 
Id. at 423.

 Here, appellant contends that this case is one of the occasional exceptions
recognized in Lopez in which the Confrontation Clause requires the admissibility of
evidence that the Rules of Evidence would normally exclude. As in Lopez, we
balance the probative value of the evidence appellant seeks to admit against the risk
its admission entails. See Lopez, 18 S.W.3d at 225. 

 Appellant contends that the instant case, as in Lopez, involves a "prototypical
'swearing match'" between appellant and J.B because J.B.'s testimony is the only
evidence of appellant's guilt; hence, J.B.'s false accusations are highly probative. See
id. However, contends appellant, unlike Lopez, J.B.'s accusations would have been
shown to be false by the testimony of Nancy and Nathan Kline and, unlike Lopez,
J.B.'s accusations against the Klines are identical to J.B's allegation against appellant. 
Hence, contends appellant, the risk that J.B.'s testimony would confuse the jury was
low. 

 The State contends that, while J.B.'s credibility was a crucial element, the trial
court reasonably concluded that the testimony had little probative value and would
unduly prejudice and confuse the jury "in light of the nature of the evidence and the
timing and circumstances surrounding those threats." We agree.

 The record reflects that the alleged threats against the Klines, that J.B. denies
having made, took place over a year after the instant offense by appellant. Cf. Lopez,
18 S.W.3d at 221 (considering allegation that took place two years prior to charged
offense); Thomas, 669 S.W.2d at 421-23 (considering false accusations that took
place in the months prior to charged offense). In addition, J.B.'s father testified that,
although J.B. had been diagnosed with attention deficit disorder prior to the instant
offense, J.B.'s emotional problems sharply escalated while in foster care and after
returning home. Namely, J.B. demonstrated anger toward and fear of adults
subsequent to returning home after almost a year in foster care, and his psychiatric
medications had to be changed and increased. There was no evidence at trial that J.B.
had a propensity to lie or a vengeful temper toward adults prior to or upon J.B.'s
allegation toward appellant. Further, unlike the complainant in Thomas, J.B. denied
having made any threats or accusations, and did not admit to having made false ones. 
Hence, the probativeness of J.B.'s threats against the Klines was low because the
issue was J.B.'s credibility at the time of his initial outcry and interview by
authorities. 

 Further, like Lopez, J.B.'s testimony concerning false accusations was likely
to unduly prejudice and confuse the jury because the record indicates that J.B.'s
threats against the Klines were not "identical," as appellant urges, to J.B.'s accusation
against appellant. As to the Klines, J.B. allegedly made general, empty threats during
emotional tirades that he would falsely report "molestation." Whereas, with regard
to the actual accusation made against appellant, Jordan testified that J.B. was at her
house playing with her son when Jordan asked J.B. if appellant was still living at his
house. Jordan testified that J.B. hung his head and began crying. Jordan asked him
what was wrong and J.B. initially refused to speak. After gentle prodding, J.B.
reluctantly told her that David had taken him to a motel, had "made him touch his
thing," and had "stuck his thing in [J.B.'s] butt." 

 We conclude that the trial court could have reasonably concluded that, in light
of the remoteness in time and the dissimilarity between the specific instances of
conduct toward the Klines and the circumstances surrounding J.B.'s accusation of
appellant, the probativeness of J.B.'s testimony was low and the risk that the jury
would be unduly prejudiced or confused was high. See Lopez, 18 S.W.3d at 225-26. 
Hence, the trial court could have reasonably concluded that the evidence was
inadmissible under rule 608(b) and that the Confrontation Clause did not mandate its
admission. See id. at 226. We hold that the trial court did not abuse its discretion in
limiting appellant's cross-examination of J.B. regarding false accusations toward the
Klines.

 Accordingly, we overrule appellant's second issue. 

Excluding evidence of Prior Inconsistent Statements

 In his third issue, appellant contends that the trial court erred by "excluding
evidence admissible under Rule 613(a) of prior inconsistent statements made by
[J.B.], in violation of [appellant's] due process rights under both the Texas and the
United States Constitutions." 

 As the State contends, the record does not show that appellant objected in the
trial court on the grounds of rule 613(a). See Tex. R. Evid. 613(a) (governing the
examination of witnesses regarding prior inconsistent statements). Hence, appellant
has not preserved error for our review. See Tex. R. App. P. 33.1. In addition, as the
State contends, appellant has not, on appeal, provided any argument or authority
concerning his constitutional claims regarding this point. Hence, appellant's issue
is inadequately briefed and presents nothing for review. See Tex. R. App. P. 38.1(h);
Alvarado v. State, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995). 

 Accordingly, we overrule appellant's third issue. 

Excluding Evidence of False Accusations

 In his first issue, appellant contends that the trial court erred by "excluding, on
relevance grounds, evidence of other false accusations and threats made by [J.B.]
around the same time as the accusations in the alleged offense, in violation of
[appellant's] due process rights under the Texas and United States Constitutions."

 The standard of review for a trial court's ruling under the Rules of Evidence
is abuse of discretion. Sauceda, 129 S.W.3d at 120. We review the trial court's
ruling in light of what was before the trial court at the time the ruling was made and
uphold the trial court's judgment if it lies within the zone of reasonable disagreement. 
Weatherred, 15 S.W.3d at 542. 

 As the State contends, appellant did not object in the trial court to the exclusion
of the evidence on due process grounds and thus appellant has failed to preserve error
with regard to this constitutional argument. See Tex. R. App. P. 33.1; Wright v. State,
28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (providing that constitutional error may
be waived by failure to object). 

 Appellant objected in the trial court on the basis of relevance and briefs his
issue as a contention that the testimony of Nancy and Nathan Kline concerning J.B.'s
threats to falsely accuse them of molestation was relevant and should have been
admitted.   However, appellant's issue states that these threats were made "around the
same time as the accusations in the alleged offense." As stated above, the record
clearly shows that any threats by J.B. toward the Klines were made over a year after
the instant offense, and it was on this ground that the trial court denied admission of
the Klines' testimony, as follows:

 [Defense counsel]: . . . I have witnesses, . . . , Nancy Kline, Matthew
Kline, and Nathan Kline, all of whom are going to
be brought forward to impeach the testimony of
[J.B.]. All on the issue--specific to the issue of
what the child's credibility is. And they will all say
that he did, in fact, make those accusations that I
asked [J.B.] about. . . . 

 [Trial Court]: Now, when is it that your witnesses are going to say
that statement occurred?

 [Defense counsel]: The times that I just put into the record, Judge. 
Summer of 2004, which [J.B.] agreed to.

 [Trial Court]: Okay. And that would be a year after the alleged
conduct in this case, correct?

 [Defense counsel]: Yes, sir.

 [Trial Court]: All right. Go ahead. [speak]

 [Defense counsel]: And the other one occurred this year. That was
Nancy Kline.

 . . . .

 [Trial Court]: Okay. I'm going to deny it if you can't show me a
case that says you're entitled to that. You got [J.B.]
for cross-examination purposes as to these events. 
You were specific in your arguments to the Court
you don't want anything else to come in, but now
you're going to leap forward to bring in other
conduct of the complainant without even bringing in
conduct of the defendant within a seven-day period. 
So you're going to need to bring me a case to show
me that you can do that or the answer is no. 

 [Defense counsel]: Well, Judge, I think the primary difference is that
[J.B.] is not the defendant in this case. So since he's
not the defendant in this case [sic] and he is the
person who is making and leveling the accusations,
then his credibility is at issue both [sic] at the time
that he made those accusations. And it also shows
his propensity towards making allegations of sexual
molestation whenever he gets mad at somebody.

 [Trial Court]: Okay.

 [Defense counsel]: And I think that's something that a juror would find
helpful in making [a] determination with reference
to credibility.

 [Trial Court]: Okay. All that you need to do is find me a case that
says that and I'll let it in.

 On appeal, as in the trial court, appellant has not cited any authority for his
proposition that evidence that the complainant in a sexual assault may have made
threats of false accusations toward others a year after the charged offense is relevant
to determining the complainant's credibility at the time of the offense. To support his
contention that the evidence was relevant, appellant relies on Thomas v. State, 669
S.W.2d 420 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd). However, as
discussed above, the complainant in Thomas made false accusations of rape or
attempted rape in the months prior to claiming that she had been raped by the
defendant. Id. at 421-23.

 As discussed above under appellant's second issue, in light of the remoteness
in time and the dissimilarity between the alleged threats toward the Klines and the
accusation in the charged offense, the Klines' testimony was not relevant because it
was not probative regarding J.B.'s credibility at the time of the instant offense. We
hold that the trial court did not abuse its discretion in excluding the Klines' testimony. 
See Sauceda, 129 S.W.3d at 120.

 Accordingly, we overrule appellant's first issue. 

Falsely Accusing Appellant of Molesting M.K.

 In his fourth issue, appellant contends that the trial court erred by excluding
evidence that J.B. had falsely accused appellant of sexually assaulting another child,
namely, Nancy Kline's ten-year-old son, M.K., after the State "opened the door" by
questioning Nancy about telephone calls made by appellant to her home. 

 The standard of review for a trial court's ruling under the Rules of Evidence
is abuse of discretion. Sauceda, 129 S.W.3d at 120. We review the trial court's
ruling in light of what was before the trial court at the time the ruling was made and
uphold the trial court's judgment if it lies within the zone of reasonable disagreement. 
Weatherred, 15 S.W.3d at 542.

 Rule of Evidence 107 provides that "[w]hen a part of an act, declaration,
conversation, writing or recorded statement is given in evidence by one party, the
whole on the same subject may be inquired into by the other." Tex. R. Evid. 107. 
The purpose of the rule is to reduce the possibility that the jury receives a false
impression from having heard only a part of some act, conversation, or writing. 
Credille v. State, 925 S.W.2d 112, 116 (Tex. App.--Houston [14th Dist.] 1996, pet.
ref'd). The first requirement of Rule 107 is that matter be "given in evidence." 
Sauceda, 129 S.W.3d at 122. The second requirement is that the omitted portion of
the statement must be on the same subject as the proposed testimony or must be
necessary to make the testimony fully understood. Id. at 123.

 Prior to trial, the trial court granted the State's motion in limine with regard to
any testimony regarding whether appellant had molested other children and regarding
any testimony by M.K. Appellant contends that, during cross-examination, the State
nevertheless "opened the door" to such testimony by asking Nancy a series of
questions designed to make it appear that appellant had pursued several of the
children in the neighborhood as "potential child sexual assault victims" and by
questioning Nancy about M.K.'s age and about telephone calls that appellant had
allegedly made to M.K., as follows:

 [State]: Ms. Kline, how--you would see the defendant around the park
fairly often when he was living with [J.B.'s family], right?

 [Kline]: Yes.

 [State]: And, when you would see him, he primarily would be interacting
with the young people or the children that lived in the park,
correct?

 [Kline]: Yeah. He talked to the kids a lot.

 [State]: In fact, he would do things with them like take them fishing
close--to a place close to the park, right?

 [Kline]: Yes.

 . . . .

 [State]: And [M.K.] would have been 13, correct?

 [Kline]: Uh-huh.

 . . . . 

 [State]: Now, [appellant] called your house once or twice, right?

 [Kline]: Yes.

 [State]: And who did he call to talk to?

 [Kline]: [M.K.]

 [State]: And do you know--did [M.K.] ever--did you actually answer the
phone on one of those occasions?

 [Kline]: Yes.

 [State]: And did--[appellant] specifically ask to talk to [M.K.], right?

 [Kline]: Yes.

 [State]: Did he do that often?

 [Kline]: No.

 [State]: Had he ever called and talked to [M.K.] during the time before the
police came out that night in July?

 [Kline]: Yes, I think a couple of times.

 [State]: How many times would you say that he called after the police had
come out?

 [Kline]: It was a long time ago. Probably only once or twice maybe.

 [State]: And to your knowledge, did [M.K.] ever talk to him?

 [Kline]: I don't think so. 


 At the close of this testimony, appellant unsuccessfully sought to introduce
statements made by J.B. that appellant had molested M.K. and to introduce testimony
rebutting, what he contends was the suggestion made by Nancy's testimony, that
appellant molested M.K. On appeal, appellant contends that Rule 107 permitted him
to introduce such evidence because the State "opened the door" with its line of
questioning concerning appellant's phone calls to the Kline house. See Tex. R. Evid.
107.

 Rule 107 requires that a matter be "given in evidence." Sauceda, 129 S.W.3d
at 122. As appellant concedes on appeal, the State did not present any evidence at
trial concerning J.B.'s accusation that appellant molested M.K. (2) Moreover, appellant
himself, on cross-examination of J.B., elicited testimony that J.B. had falsely reported
to police that appellant molested M.K. With regard to Nancy's testimony, appellant
does not state what specific evidence was omitted and has not demonstrated that the
trial court abused its discretion in determining that Nancy's vague recollections that
appellant may have called her house one to four times created an incomplete or
misleading impression that appellant molested her son, M.K., or that such evidence
was necessary to make her testimony fully understood. See id. at 123.

 Accordingly, we overrule appellant's fourth issue. 

Legal Sufficiency

 In his fifth issue, appellant contends that the evidence is legally insufficient to
support his conviction because the State failed to present any evidence to prove that
J.B. was not appellant's spouse. 

 A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W. 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155
(Tex. App.--Houston [1st Dist.] 1997, no pet.). 

 A person commits aggravated sexual assault of a child 

 if the person intentionally or knowingly causes the penetration of the
anus or sexual organ of a child by any means; [or] . . . causes the anus
of a child to contact the mouth, anus, or sexual organ of another person,
including the actor; . . . if . . . the victim is younger than 14 years of age. 


Tex. Pen. Code Ann. § 22.021(a)(1)(B), (a)(2)(B). Under section 22.021, the term
"'child' has the meaning assigned by Section 22.011(c)." Id. 22.021(b)(1). Under
section 22.011(c), a "child" is a person "younger than 17 years of age who is not the
spouse of the actor." Id. 22.011(c)(1). A "spouse" means a person who is legally
married to another. Id. 22.011(c)(2).

 Legal marriage in Texas requires a marriage license or proof of an informal
marriage. See Tex. Fam. Code Ann. §§ 2.001(b), 2.401 (Vernon 2006). A marriage
license may not be issued for the marriage of persons of the same sex. See Tex. Fam.
Code Ann. § 2.001(b). An informal marriage is solely recognized between a man
and a woman. Id. § 2.401. 

 Here, because the State clearly showed that J.B. is a male and that appellant is
male, the evidence is legally sufficient to prove that appellant was not married to J.B. 
See Jasquez v. State, 579 S.W.2d 247, 248-49 (Tex. Crim. App. 1979) (holding that
appellant's substantive rights were not prejudiced by omission in indictment that
complainant was not the spouse of the defendant because it had been clearly shown
that both appellant and complainant were male and that they could not have obtained
marriage license nor entered into common-law marriage); Henson v. State, 638
S.W.2d 504, 505 (Tex. App.--Houston [1st Dist.] 1981, no pet.) (concluding that, in
prosecution for sexual abuse of child, it was not fundamental error for trial court to
omit from its charge element that child must not be spouse of defendant because male
defendant could not have been married to male complainant).

 Viewing the evidence in a light most favorable to the verdict, a rational jury
could have found beyond a reasonable doubt that J.B. was not appellant's spouse. 
See Johnson v. State, 23 S.W.3d at 7; Howley, 943 S.W.2d at 155. Accordingly, we
overrule appellant's fifth point of error.

Conclusion

 We affirm the judgment of the trial court. 

 



 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Jennings, and Higley.

Judge Jennings, dissenting.

Publish. Tex. R. App. P. 47.2(b).

1. 
 
 
2. '