Opinion filed December 6, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed December 6,
2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00098-CR 

                                                    __________

 

                             RODERICK DELANO BALEY, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 173rd District Court

 

                                                     Henderson
County, Texas

 

                                                 Trial
Court Cause No. A-13,069

 



 

                                                                   O
P I N I O N

 

The
trial court convicted Roderick Delano Baley of felony driving while intoxicated
(DWI) and sentenced him to five years confinement.  Baley challenges his
conviction with one issue, contending that the trial court erred by allowing
into evidence the results of a portable breath test.  Because we find that the
trial court did not err, we affirm.








Baley
was indicted for third-degree felony DWI.  Baley pleaded not guilty and waived
a jury.  The evidence established that Baley was involved in a one-car
accident.  A Department of Public Safety trooper, Scott Smith, investigated the
accident.  He smelled alcohol on Baley=s
breath and saw beer cans at the scene near Baley=s
vehicle.  Trooper Smith questioned Baley, and he admitted to drinking.  Trooper
Smith administered three field sobriety tests, including a portable breath
test.  Baley was arrested and taken to the police station where he refused to
provide a breath sample.

Trooper
Smith=s car was
equipped with a video recorder.  The State introduced a videotape Trooper Smith
made of this incident.  The videotape was played for the court, and the
attorneys questioned Trooper Smith as the videotape played.  During that
process, the following transpired:

[PROSECUTOR] 
Q:   And what are you doing right now?

 

[TROOPER
SMITH]  A:  I=m having
him blow in a portable breath, a preliminary breath tester.

 

[DEFENSE
COUNSEL] Q:  As it turns out, he doesn=t
wind up blowing in the thing; is that right?

 

[TROOPER
SMITH]  A:  He does blow into this preliminary breath tester.

 

[DEFENSE
COUNSEL]  Q:  He does?

 

[TROOPER
SMITH]  A:  Yes, sir.

 

[DEFENSE
COUNSEL]  Q:  Is there any way that you could save the results of that or is
that just something that B
B 

 

[TROOPER
SMITH]  A:  No.  No, sir.  It=s
just a digital read-out that goes away when you turn it off.

 

[DEFENSE
COUNSEL]  Can you rewind that a little bit again and just play it all the way
through and let=s
listen to this.

 

[DEFENSE
COUNSEL]  Q:  This is the section where you say that he gave the breath test;
is that right, where he gave the sample?

 

[TROOPER
SMITH]  A:  Of the little portable hand tester.

 

. .
. .

 

[PROSECUTOR] 
Q:  Well, I want to follow-up there, Trooper.  So did he give a sample, a
breath sample?  I guess, did he give enough of a breath sample for the machine
to give a result?

 








[TROOPER SMITH] 
A:  For the preliminary, yes.  For the preliminary breath tester, he did.

 

 The State
argued that Baley=s
questions opened the door to allow the portable breath tester results into
evidence.  The trial court agreed.  Baley then objected because no predicate on
the scientific validity of the portable breath test had been laid.  The trial
court overruled Baley=s
objection, and Trooper Smith testified that the test revealed a blood alcohol
content of 0.111.

Baley
challenges the trial court=s
judgment with a single issue, contending that the trial court erred by allowing
the test results into evidence because the State failed to prove the
reliability of portable breath testing machines as required by Kelly v.
State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  The State responds that
it was unnecessary to do so because Baley opened the door and that,
alternatively, any error was harmless.

We
review a trial court=s
decision to admit or exclude evidence under an abuse-of-discretion standard and
will not reverse a trial court=s
ruling unless it falls outside the zone of reasonable disagreement.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  We review the
decision in light of what was before the trial court at the time its ruling was
made.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
If the ruling was correct on any theory of law applicable to the case, we must
uphold that decision.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000).

Tex. R. Evid. 107, sometimes referred
to as the Rule of Optional Completeness,  provides that, A[w]hen part of an act,
declaration, conversation, writing or recorded statement is given in evidence
by one party, the whole on the same subject may be inquired into by the other.@  The purpose of the rule
is to reduce the possibility that the fact-finder receives a false impression
from having heard only part of some act, conversation, or writing.  Credille
v. State, 925 S.W.2d 112, 116 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d). 
The rule=s application
is limited by the requirement that the omitted portion must (1) be on the same
subject and (2) be necessary to make it fully understood.  Sauceda v. State,
129 S.W.3d 116, 123 (Tex. Crim. App. 2004).








The
evidence introduced under this rule need not be ordinarily admissible.  Parr
v. State, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977).  AWhen defense counsel
pursues a subject that would ordinarily be outside the realm of proper comment
by the prosecutor, the defendant opens the door and creates a right of reply
for the State.@  Credille,
925 S.W.2d at 116; see also Johnson v. State, 747 S.W.2d 451, 453-54
(Tex. App.CHouston
[14th Dist.] 1988, pet. ref=d)
(Rule 107 permits the introduction of otherwise inadmissible evidence when that
evidence is necessary to fully and fairly explain a matter opened up by the
adverse party).  Courts have, for example, found that extraneous offenses,[1]
hearsay statements,[2] and
incompetent testimony[3] were
admissible because the door had been opened.  

At
trial, Baley argued that his questions did not open the door because he was
simply trying to determine if the device indicated that it ran a valid test. 
He contended that the answer to his question was either yes it did or no it did
not and that this question would not require the trooper to give the actual
test result.  The trial court disagreed, noting that, even if the question was Adid the device show that it
had performed a valid test, it=s
just a natural corollary to ask, you know, since he said it gave a valid test,
it=s a natural
corollary to say what, you know, what did the test show.@

We
cannot say that the trial court abused its discretion.  In the abstract, it is
possible to draw a distinction between asking whether the machine worked
properly on a particular occasion and asking what the test revealed on that
occasion.  But in the courtroom, drawing such distinctions also requires
consideration of factors that the trial court is best positioned to evaluate. 
Furthermore, Baley=s
questions went beyond merely asking if the machine worked correctly.  He asked
whether the machine gave a result and if that result was saved.  We appreciate
that a portable breath tester can be calibrated and thus tested, but in the
context of whether it worked when used on Baley, the only way Trooper Smith would
know this is by reading the digital readout.  Thus, Baley=s questions necessarily
implicated what Trooper Smith saw on the machine following Baley=s test.  Consequently, we
find that the trial court reasonably concluded that Baley opened the door and
that the trial court correctly overruled Baley=s
objection to the lack of reliability evidence.








Even
if we are incorrect, any error was harmless.  Tex. R. App. P. 44.2(b) provides that an appellate court must
disregard a nonconstitutional error that does not affect a defendant=s substantial rights.  We
may not reverse for nonconstitutional error if, after examining the record as a
whole, we have fair assurance that the error did not have a substantial and
injurious effect or influence in determining the verdict.  Casey v. State,
215 S.W.3d 870, 885 (Tex. Crim. App. 2007).  The question is not whether there
was sufficient evidence to support the verdict.  Bagheri v. State, 119
S.W.3d 755, 763 (Tex. Crim. App. 2003).  Instead, we review the entire record
and consider the nature of evidence supporting the verdict, the character of
the alleged error, and how it might be considered in connection with other
evidence in the case.  Id.

The
indictment alleged that Baley was intoxicated by not having the normal use of
his mental or physical faculties.  The indictment did not include a charge that
his blood alcohol concentration was .08 or above.  There was considerable
evidence that Baley was intoxicated.  Alex Caddell was at home when he heard
the accident.  He went to the scene and saw Baley in his vehicle and saw beer
cans scattered about.  Baley=s
axle was bent up under the pickup, but he was still trying to drive it.  Baley
appeared panicked and was upset because he could not leave.  Caddell also saw
Baley throw four or five beer cans out of his pickup.

Trooper
Smith testified that Baley admitted he had been drinking and that he appeared
intoxicated.  Trooper Smith smelled alcohol on Baley=s breath, his eyes were red, there were beer
cans near Baley=s
vehicle, and he had difficulty speaking clearly.  Trooper Smith administered a
horizontal gaze nystagmus test and had Baley perform the walk-and-turn test. 
Both tests indicated that Baley was intoxicated.  Finally, Baley testified.  He
admitted to drinking three beers in a four-hour time span before the accident.

On
this record we can say with assurance that the results of the portable breath
tester did not have a substantial and injurious effect or influence on the
trial court=s
verdict.  The test result was cumulative of other evidence establishing
intoxication, and it constituted a minor portion of the State=s evidence.  Baley=s issue is overruled.

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

December 6, 2007

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









[1]Evans v. State,
643 S.W.2d 157, 161 (Tex. App.CAustin 1982, no
pet.).





[2]Credille, 925
S.W.2d at 116.





[3]Jones v. State,
501 S.W.2d 308, 311 (Tex. Crim. App. 1973).