**David Clyde BILLODEAU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–01130–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 7, 2007.

Discretionary Review Granted
Jan. 16, 2008.

Kim A. Parks, Houston, for Appellant.

Charles A. Rosenthal, Dist. Attorney–Harris County, Shirley Cornelius, Asst. Dist. Attorney–Harris County, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## CORRECTED OPINION[1]

LAURA CARTER HIGLEY, Justice.

Appellant, David Clyde Billodeau, was charged by indictment with aggravated sexual assault of a child, to which he pleaded not guilty. *See* TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2006). A jury found appellant guilty and assessed punishment at 30 years' confinement.

On appeal, appellant presents five issues. In his first through fourth issues, appellant contends that the trial court erred by (1) excluding evidence of "other false accusations and threats" made by the complainant "around the same time as the accusations in the alleged offense, in violation of [appellant's] due process rights under the Texas and United States Constitutions"; (2) limiting appellant's cross-examination of the complainant, "in violation of [appellant's] right to confront witnesses under the United States Constitution"; (3) "excluding evidence admissible under Texas Rule of Evidence 613(a) of prior inconsistent statements made by [the complainant], in violation of [appellant's] due process rights under both the Texas and United States Constitutions"; and (4) excluding evidence that the complainant falsely accused appellant of having sexually assaulted another child. In his fifth issue, appellant contends that the evidence was legally insufficient to support his conviction because the State failed to show that J.B. was not appellant's spouse.

We affirm.

## Background

In early 2003, the complainant, J.B., who is male and was then eight years of age, had been spending weekends at the home of Robert and Edith Wolfe, close friends of J.B.'s parents. Appellant, who is male and was then 34 years of age, had been living with the Wolfes during that period. Over time, J.B. and appellant became friends. In May of 2003, appellant was struck by a car while riding his bicycle. Upon his release from the hospital, J.B.'s family invited appellant to live with them while he recuperated.

J.B.'s father testified that appellant lived at the their home for two to three weeks and then moved to an apartment in Channelview, where J.B. began spending his weekends visiting appellant. J.B. testified that, one weekend in late July, appellant took him to the Palms Motel in Baytown. At the motel, J.B. was lying in bed on his stomach when appellant kissed him, removed J.B.'s clothing, and engaged in sexual conduct with J.B. J.B. testified that he pushed appellant off of the bed, ran into the bathroom and put his clothes on, and

---

1. To correct a clerical error on page 5 and a clerical error on page 19, we withdraw our opinion of June 7, 2007, and issue this opinion in its stead. *See* TEX.R.APP. P. 19.3(a). Our judgment of the same date and the dissent remain unchanged.

ran to the motel office. The office was closed, so he returned to the room. J.B. testified that appellant threatened to kill him if he told anyone. J.B. also testified that appellant drove him to McDonalds for dinner, that they returned to the room and fell asleep, and that J.B.'s father picked J.B. up from the motel at 7:30 the next morning.

Three days later, on July 29, 2003, J.B. told a neighbor, Marilyn Jordan, the details of what had occurred at the motel, and Jordan called the police. J.B.'s father testified that, when he arrived home from work that day and saw the police at Jordan's house, he asked J.B. what was going on. J.B. became emotional and told him what had occurred the prior weekend at the motel.

That evening, J.B.'s mother took J.B. to Texas Children's Hospital. Dr. Erin Endom, a pediatric emergency physician at Texas Children's Hospital, testified that she examined J.B. and that there were no abnormal physical findings. Dr. Endom also testified that this was not unusual, given that three days had elapsed since the incident.

The next day, Child Protective Services removed J.B. and his sister from the their home and placed them into foster care, where J.B. remained for 11 months before returning home in May of 2004. J.B.'s father testified that J.B. had been in psychiatric care since the age of six and that, since returning from foster care, J.B. had shown severe behavioral changes and demonstrated an intense fear of and anger toward adults.

Appellant disputed that he ever accompanied J.B. to a motel and testified that he could not have driven to a motel or to McDonalds, as J.B. alleged, because he did not have a car during the summer of 2003. Appellant testified that he lived with J.B.'s family from the time of his release from

the hospital after his bicycle injury to July 4, 2003, when, having received a settlement from the bicycle accident, he moved back to Louisiana. It was appellant's testimony that, in late May or early June, while living at J.B.'s home, he purchased a set of remote control cars for J.B. and that, when J.B.'s parents insisted that appellant take the cars back, J.B. became enraged and threw the cars at appellant. It was appellant's testimony that this incident sparked J.B.'s allegations in the instant offense.

At trial, appellant unsuccessfully sought to admit the testimony of J.B.'s neighbors, Nancy Kline and her adult son Nathan Kline, that J.B. had threatened to falsely accuse them of molestation. By bill of exception, appellant elicited testimony from Nancy that J.B. was at her house over a year after the events of July of 2003 and had used foul language in front of her younger children. Nancy testified that, when she grasped J.B. by the shoulders and scolded him, J.B. became enraged and stated, with a smirk, "I am going to call the cops and tell them that you're molesting me." Nathan testified that, on an occasion in November of 2004, when he had refused to allow J.B. to play with Nathan's younger siblings, J.B. threatened to tell his parents that Nathan had molested him.

## Limiting Cross–Examination

In his second issue, appellant contends that the trial court erred by limiting his "cross-examination of [J.B.], in violation of [appellant's] right to confront witnesses under the United States Constitution, by prohibiting questions about prior accusations and threats made by [J.B.] intended to impeach his credibility."

Specifically, on cross-examination, appellant sought to impeach J.B.'s credibility by questioning him about his threats to false-

ly accuse Nancy Kline of molestation, as follows:

> [Defense counsel]: Back earlier this year, do you remember an incident where Nancy Kline took you aside and washed your mouth out with soap?
>
> [State]: Objection. Relevance.
>
> [J.B.]: Yes.
>
> [Trial Court]: That's overruled.
>
> [Defense counsel]: Do you know why she did that?
>
> [State]: Objection. Relevance unless it can be established. And it calls for speculation.
>
> [Trial Court]: That's sustained.
>
> [Defense counsel]: Well, she washed your mouth out, didn't she, because you had called your sister a b——?
>
> [State]: Objection. Relevance.
>
> [Trial Court]: That's sustained.
>
> [J.B.]: Yes.
>
> [Defense counsel]: Okay. Now after she washed your mouth out with soap, isn't it true that you threatened to call CPS and tell them that she had molested you?
>
> [State]: Objection. Relevance.
>
> [Trial Court]: Sustained.

A bench conference immediately followed, on the record, during which appellant's counsel contended that he should be permitted to pursue this line of questioning because

> [it was] highly relevant that [J.B.] made multiple accusations and threatened people that he was going to go to CPS and tell them that he had been molested whenever it is that he's not [sic] gotten mad; and I can show this with my impeachment witnesses that this is, in fact, true. It goes to directly to the matter of credibility. It goes directly to matters of the United States Constitution where

I have a right under the confrontation clause to look into these matters.

The jury was excused and the trial court heard the proffered testimony, which included questioning J.B. regarding Nancy and Nathan Kline's allegations, as follows:

> [Defense counsel]: [J.B.], isn't it true that after Nancy Kline washed your mouth out with soap, that you threatened to call CPS and tell them that she had molested you?
>
> [J.B.]: No.
>
> [Defense counsel]: Okay. Do you recall at a—in the summer—last summer, summer of 2004, going over to the Kline house and wanting to see the two children to go out and play?
>
> [J.B.]: Yes.
>
> [Defense counsel]: And Nathan was there and he told you that they weren't home, but you knew they were home, didn't you?
>
> [J.B.]: Yes.
>
> [Defense counsel]: Okay. And did that make you mad?
>
> [J.B.]: Yes.
>
> [Defense counsel]: Okay. And didn't you then say to Nathan that you were going to go home and tell your mom that he had molested you?
>
> [J.B.]: No.

Appellant then reasserted his relevance and Confrontation Clause contentions. The trial court refused to admit the testimony on the ground that the accusations had occurred over a year after the offense at issue.

On appeal, appellant contends that, pursuant to *Lopez v. State*, 18 S.W.3d 220 (Tex.Crim.App.2000), the exclusion of the proffered testimony violated appellant's rights under the Confrontation Clause. The State contends that the evidence is

inadmissible pursuant to Rule of Evidence 608(b). *See* TEX.R. EVID. 608(b).

## A. The Law and Standard of Review

■■■■ The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. A primary interest secured by the Confrontation Clause is the right to cross-examination. *Lopez,* 18 S.W.3d at 222. However, a trial court has broad discretion to impose reasonable limits on cross-examination "to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Id.* In determining "whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail." *Id.*

Rule of Evidence 608(b) provides, in pertinent part, that "[s]pecific instances of the conduct of a witness, for purposes of attacking ... the witness' credibility, other than conviction of crime ... may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence" TEX.R. EVID. 608(b).

We review a trial court's ruling under the Rules of Evidence for an abuse of discretion. *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim.App.2004). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

## B. Analysis

In *Lopez,* Lopez was convicted of aggravated sexual assault of a child. 18 S.W.3d at 222. The only evidence of Lopez's guilt was the complainant's accusation. *Id.* at 225. At trial, Lopez unsuccessfully sought to introduce impeachment evidence that the complainant had falsely accused his mother of physical abuse, in that she allegedly threw the complainant against a washing machine two years prior to the charged offense. *Id.* at 221. On appeal, Lopez contended that the evidence was admissible under the Confrontation Clause, and the court of appeals reversed. *Id.* at 222.

On review, the Court of Criminal Appeals remanded to the court of appeals to address the State's argument that the evidence was inadmissible pursuant to Rule of Evidence 608(b). *Id.* On remand, the court of appeals held that, despite the proscriptions of Rule 608(b), the Confrontation Clause demanded that the evidence be admitted. *Id.*

On subsequent review, the Court of Criminal Appeals considered whether the Confrontation Clause required it to "carve out a special exception to the Rules of Evidence for sexual offenses," as other states had done. *Id.* at 223. While the Court refused to create a per se exception to Rule 608(b) for sexual offenses, it acknowledged "that the Confrontation Clause occasionally may require the admissibility of evidence that the Rules of Evidence would exclude," as determined on a case-by-case basis. *Id.* at 225.

The Court then considered whether such an exception applied to the case at hand. *Id.* The Court balanced the probative value of the evidence Lopez had sought to introduce against the risk its admission entailed. *Id.* The Court determined that, because there was no evidence other than the complainant's allegations, Lopez had a heightened need to impeach his credibility; however, the evidence that Lopez sought to admit would not have achieved that goal because the prior accusation had not been shown to be false and there had been no

showing that the prior accusation (physical abuse) and the charged offense (sexual assault) were similar. *Id.* at 225–26. The Court concluded that the evidence failed to have any probative value in impeaching the complainant's credibility and there was high risk that the evidence would unduly prejudice and confuse the jury. *Id.* at 226. The Court held that the trial court properly excluded the evidence Lopez sought to admit because it was inadmissible under Rule 608(b) and the Confrontation Clause did not mandate its admissibility. *Id.*

Conversely, in a pre-*Lopez* case, *Thomas v. State*, 669 S.W.2d 420, 423 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd), this court held that the Confrontation Clause mandated the admission of testimony by the complainant as to false accusations. There, Thomas was convicted of aggravated rape of a child. *Id.* at 421. At trial, Thomas had sought to admit testimony by the complainant that she admitted to having, in the months prior to the charged offense, falsely reported to family members and a neighbor two incidents of rape or attempted rape by strangers. *Id.* at 421–22. Thomas presented this testimony, as well as testimony by the complainant's mother that the complainant had made the allegations and that the mother did not believe her, by bill of exception. *Id.* This court held that, because the testimony of the complainant and her mother showed that at least one of the prior accusations was false, the trial court's refusal to allow the appellant to question the complainant as to these matters before the jury amounted to a violation of the Confrontation Clause. *Id.* at 423.

█ Here, appellant contends that this case is one of the occasional exceptions recognized in *Lopez* in which the Confrontation Clause requires the admissibility of evidence that the Rules of Evidence would normally exclude. As in *Lopez*, we balance the probative value of the evidence appellant seeks to admit against the risk its admission entails. *See Lopez*, 18 S.W.3d at 225.

Appellant contends that the instant case, as in *Lopez*, involves a "prototypical 'swearing match'" between appellant and J.B. because J.B.'s testimony is the only evidence of appellant's guilt; hence, J.B.'s false accusations are highly probative. *See id.* However, contends appellant, unlike *Lopez*, J.B.'s accusations would have been shown to be false by the testimony of Nancy and Nathan Kline and, unlike *Lopez*, J.B.'s accusations against the Klines are identical to J.B.'s allegation against appellant. Hence, contends appellant, the risk that J.B.'s testimony would confuse the jury was low.

The State contends that, while J.B.'s credibility was a crucial element, the trial court reasonably concluded that the testimony had little probative value and would unduly prejudice and confuse the jury "in light of the nature of the evidence and the timing and circumstances surrounding those threats." We agree.

The record reflects that the alleged threats against the Klines, that J.B. denies having made, took place over a year *after* the instant offense by appellant. *Cf. Lopez*, 18 S.W.3d at 221 (considering allegation that took place two years *prior* to charged offense); *Thomas*, 669 S.W.2d at 421–23 (considering false accusations that took place in the months *prior* to charged offense). In addition, J.B.'s father testified that, although J.B. had been diagnosed with attention deficit disorder prior to the instant offense, J.B.'s emotional problems sharply escalated while in foster care and after returning home. Namely, J.B. demonstrated anger toward and fear of adults subsequent to returning home after almost a year in foster care, and his psychiatric medications had to be changed

and increased. There was no evidence at trial that J.B. had a propensity to lie or a vengeful temper toward adults prior to or upon J.B.'s allegation toward appellant. Further, unlike the complainant in *Thomas*, J.B. denied having made any threats or accusations, and did not admit to having made false ones. Hence, the probativeness of J.B.'s threats against the Klines was low because the issue was J.B.'s credibility at the time of his initial outcry and interview by authorities.

Further, like *Lopez*, J.B.'s testimony concerning false accusations was likely to unduly prejudice and confuse the jury because the record indicates that J.B.'s threats against the Klines were not "identical," as appellant urges, to J.B.'s accusation against appellant. As to the Klines, J.B. allegedly made general, empty threats during emotional tirades that he would falsely report "molestation." Whereas, with regard to the actual accusation made against appellant, Jordan testified that J.B. was at her house playing with her son when Jordan asked J.B. if appellant was still living at his house. Jordan testified that J.B. hung his head and began crying. Jordan asked him what was wrong and J.B. initially refused to speak. After gentle prodding, J.B. reluctantly told her that David had taken him to a motel, had "made him touch his thing," and had "stuck his thing in [J.B.'s] butt."

We conclude that the trial court could have reasonably concluded that, in light of the remoteness in time and the dissimilarity between the specific instances of conduct toward the Klines and the circumstances surrounding J.B.'s accusation of appellant, the probativeness of J.B.'s testimony was low and the risk that the jury would be unduly prejudiced or confused was high. *See Lopez*, 18 S.W.3d at 225–26. Hence, the trial court could have reasonably concluded that the evidence was inadmissible under rule 608(b) and that the Confrontation Clause did not mandate its admission. *See id.* at 226. We hold that the trial court did not abuse its discretion in limiting appellant's cross-examination of J.B. regarding false accusations toward the Klines.

Accordingly, we overrule appellant's second issue.

### Excluding evidence of Prior Inconsistent Statements

In his third issue, appellant contends that the trial court erred by "excluding evidence admissible under Rule 613(a) of prior inconsistent statements made by [J.B.], in violation of [appellant's] due process rights under both the Texas and the United States Constitutions."

■ As the State contends, the record does not show that appellant objected in the trial court on the grounds of rule 613(a). *See* TEX.R. EVID. 613(a) (governing the examination of witnesses regarding prior inconsistent statements). Hence, appellant has not preserved error for our review. *See* TEX.R.APP. P. 33.1. In addition, as the State contends, appellant has not, on appeal, provided any argument or authority concerning his constitutional claims regarding this point. Hence, appellant's issue is inadequately briefed and presents nothing for review. *See* TEX. R.APP. P. 38.1(h); *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex.Crim.App.1995).

Accordingly, we overrule appellant's third issue.

### Excluding Evidence of False Accusations

In his first issue, appellant contends that the trial court erred by "excluding, on relevance grounds, evidence of other false accusations and threats made by [J.B.] around the same time as the accusations in

the alleged offense, in violation of [appellant's] due process rights under the Texas and United States Constitutions."

The standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion. *Sauceda*, 129 S.W.3d at 120. We review the trial court's ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542.

■ As the State contends, appellant did not object in the trial court to the exclusion of the evidence on *due process* grounds and thus appellant has failed to preserve error with regard to this constitutional argument. *See* TEX.R.APP. P. 33.1; *Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim.App.2000) (providing that constitutional error may be waived by failure to object).

■ Appellant objected in the trial court on the basis of relevance and briefs his issue as a contention that the testimony of Nancy and Nathan Kline concerning J.B.'s threats to falsely accuse them of molestation was relevant and should have been admitted. However, appellant's issue states that these threats were made "around the same time as the accusations in the alleged offense." As stated above, the record clearly shows that any threats by J.B. toward the Klines were made over a year after the instant offense, and it was on this ground that the trial court denied admission of the Klines' testimony, as follows:

[Defense counsel]: ... I have witnesses, ..., Nancy Kline, Matthew Kline, and Nathan Kline, all of whom are going to be brought forward to impeach the testimony of [J.B.]. All on the issue— specific to the issue of what the child's credibility is. And they will all say

that he did, in fact, make those accusations that I asked [J.B.] about....

[Trial Court]: Now, when is it that your witnesses are going to say that statement occurred?

[Defense counsel]: The times that I just put into the record, Judge. Summer of 2004, which [J.B.] agreed to.

[Trial Court]: Okay. And that would be a year after the alleged conduct in this case, correct?

[Defense counsel]: Yes, sir.

[Trial Court]: All right. Go ahead. [speak]

[Defense counsel]: And the other one occurred this year. That was Nancy Kline.

....

[Trial Court]: Okay. I'm going to deny it if you can't show me a case that says you're entitled to that. You got [J.B.] for cross-examination purposes as to these events. You were specific in your arguments to the Court you don't want anything else to come in, but now you're going to leap forward to bring in other conduct of the complainant without even bringing in conduct of the defendant within a seven-day period. So you're going to need to bring me a case to show me that you can do that or the answer is no.

[Defense counsel]: Well, Judge, I think the primary difference is that [J.B.] is not the defendant in this case. So since he's not the defendant in this case [sic] and he is the person who is making and leveling the accusations, then his credibility is at issue both [sic] at the time that he made those accusations. And it also shows his propensity towards making allegations of sexual molestation whenever he gets mad at somebody.

[Trial Court]: Okay.

[Defense counsel]: And I think that's something that a juror would find helpful in making [a] determination with reference to credibility.

[Trial Court]: Okay. All that you need to do is find me a case that says that and I'll let it in.

On appeal, as in the trial court, appellant has not cited any authority for his proposition that evidence that the complainant in a sexual assault may have made threats of false accusations toward others a year *after* the charged offense is relevant to determining the complainant's credibility at the time of the offense. To support his contention that the evidence was relevant, appellant relies on *Thomas v. State*, 669 S.W.2d 420 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd). However, as discussed above, the complainant in *Thomas* made false accusations of rape or attempted rape in the months prior to claiming that she had been raped by the defendant. *Id.* at 421–23.

As discussed above under appellant's second issue, in light of the remoteness in time and the dissimilarity between the alleged threats toward the Klines and the accusation in the charged offense, the Klines' testimony was not relevant because it was not probative regarding J.B.'s credibility at the time of the instant offense. We hold that the trial court did not abuse its discretion in excluding the Klines' testimony. *See Sauceda*, 129 S.W.3d at 120.

Accordingly, we overrule appellant's first issue.

### Falsely Accusing Appellant of Molesting M.K.

■ In his fourth issue, appellant contends that the trial court erred by excluding evidence that J.B. had falsely accused appellant of sexually assaulting another child, namely, Nancy Kline's ten-year-old son, M.K., after the State "opened the door" by questioning Nancy about telephone calls made by appellant to her home.

The standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion. *Sauceda*, 129 S.W.3d at 120. We review the trial court's ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542.

■ Rule of Evidence 107 provides that "[w]hen a part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other." Tex.R. Evid. 107. The purpose of the rule is to reduce the possibility that the jury receives a false impression from having heard only a part of some act, conversation, or writing. *Credille v. State*, 925 S.W.2d 112, 116 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). The first requirement of Rule 107 is that matter be "given in evidence." *Sauceda*, 129 S.W.3d at 122. The second requirement is that the omitted portion of the statement must be on the same subject as the proposed testimony or must be necessary to make the testimony fully understood. *Id.* at 123.

Prior to trial, the trial court granted the State's motion in limine with regard to any testimony regarding whether appellant had molested other children and regarding any testimony by M.K. Appellant contends that, during cross-examination, the State nevertheless "opened the door" to such testimony by asking Nancy a series of questions designed to make it appear that appellant had pursued several of the children in the neighborhood as "potential child sexual assault victims" and by questioning Nancy about M.K.'s age and about

telephone calls that appellant had allegedly made to M.K., as follows:

> [State]: Ms. Kline, how—you would see the defendant around the park fairly often when he was living with [J.B.'s family], right?
>
> [Kline]: Yes.
>
> [State]: And, when you would see him, he primarily would be interacting with the young people or the children that lived in the park, correct?
>
> [Kline]: Yeah. He talked to the kids a lot.
>
> [State]: In fact, he would do things with them like take them fishing close—to a place close to the park, right?
>
> [Kline]: Yes.
>
> . . . .
>
> [State]: And [M.K.] would have been 13, correct?
>
> [Kline]: Uh-huh.
>
> . . . .
>
> [State]: Now, [appellant] called your house once or twice, right?
>
> [Kline]: Yes.
>
> [State]: And who did he call to talk to?
>
> [Kline]: [M.K.]
>
> [State]: And do you know—did [M.K.] ever—did you actually answer the phone on one of those occasions?
>
> [Kline]: Yes.
>
> [State]: And did—[appellant] specifically ask to talk to [M.K.], right?
>
> [Kline]: Yes.
>
> [State]: Did he do that often?
>
> [Kline]: No.
>
> [State]: Had he ever called and talked to [M.K.] during the time before the police came out that night in July?
>
> [Kline]: Yes, I think a couple of times.

> [State]: How many times would you say that he called after the police had come out?
>
> [Kline]: It was a long time ago. Probably only once or twice maybe.
>
> [State]: And to your knowledge, did [M.K.] ever talk to him?
>
> [Kline]: I don't think so.

At the close of this testimony, appellant unsuccessfully sought to introduce statements made by J.B. that appellant had molested M.K. and to introduce testimony rebutting, what he contends was the suggestion made by Nancy's testimony, that appellant molested M.K. On appeal, appellant contends that Rule 107 permitted him to introduce such evidence because the State "opened the door" with its line of questioning concerning appellant's phone calls to the Kline house. *See* Tex.R. Evid. 107.

Rule 107 requires that a matter be "given in evidence." *Sauceda,* 129 S.W.3d at 122. As appellant concedes on appeal, the State did not present any evidence at trial concerning J.B.'s accusation that appellant molested M.K.[2] Moreover, appellant himself, on cross-examination of J.B., elicited testimony that J.B. had falsely reported to police that appellant molested M.K. With regard to Nancy's testimony, appellant does not state what specific evidence was omitted and has not demonstrated that the trial court abused its discretion in determining that Nancy's vague recollections that appellant may have called her house one to four times created an incomplete or misleading impression that appellant molested her son, M.K., or that such evidence was necessary to make her testimony fully understood. *See id.* at 123.

Accordingly, we overrule appellant's fourth issue.

---

**2.** The trial court sustained the State's objections to such testimony.

## Legal Sufficiency

■ In his fifth issue, appellant contends that the evidence is legally insufficient to support his conviction because the State failed to present any evidence to prove that J.B. was not appellant's spouse.

A legal sufficiency challenge requires us to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Howley v. State*, 943 S.W.2d 152, 155 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

A person commits aggravated sexual assault of a child

> if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means; [or] ... causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; ... if ... the victim is younger than 14 years of age.

TEX. PEN.CODE ANN. § 22.021(a)(1)(B), (a)(2)(B). Under section 22.021, the term " 'child' has the meaning assigned by Section 22.011(c)." *Id.* 22.021(b)(1). Under section 22.011(c), a "child" is a person "younger than 17 years of age who is not the spouse of the actor." *Id.* 22.011(c)(1). A "spouse" means a person who is legally married to another. *Id.* 22.011(c)(2).

Legal marriage in Texas requires a marriage license or proof of an informal marriage. *See* TEX. FAM.CODE ANN. §§ 2.001(b), 2.401 (Vernon 2006). A marriage license may not be issued for the marriage of persons of the same sex. *See* TEX. FAM.CODE ANN. § 2.001(b). An informal marriage is solely recognized between a man and a woman. *Id.* § 2.401.

Here, because the State clearly showed that J.B. is a male and that appellant is male, the evidence is legally sufficient to prove that appellant was not married to J.B. *See Jacquez v. State*, 579 S.W.2d 247, 248–49 (Tex.Crim.App.1979) (holding that appellant's substantive rights were not prejudiced by omission in indictment that complainant was not the spouse of the defendant because it had been clearly shown that both appellant and complainant were male and that they could not have obtained marriage license nor entered into common-law marriage); *Henson v. State*, 638 S.W.2d 504, 505 (Tex.App.-Houston [1st Dist.] 1981, no pet.) (concluding that, in prosecution for sexual abuse of child, it was not fundamental error for trial court to omit from its charge element that child must not be spouse of defendant because male defendant could not have been married to male complainant).

Viewing the evidence in a light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that J.B. was not appellant's spouse. *See Johnson v. State*, 23 S.W.3d at 7; *Howley*, 943 S.W.2d at 155. Accordingly, we overrule appellant's fifth point of error.

## Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

Because the majority errs in holding that the trial court did not abuse its discretion in (1) precluding appellant from cross-examining the complainant about his threats, made after the instant offense, but prior to his trial testimony, of false allegations of sexual abuse against Nancy and Nathan Kline and (2) excluding the Klines'

testimony about the threats, I respectfully dissent.

Although the majority acknowledges that the complainant's "credibility was a crucial element" here, it agrees with the State that "the trial court reasonably concluded that the testimony had little probative value and would unduly prejudice and confuse the jury 'in light of the nature of the evidence and the timing and circumstances surrounding those threats.'" The majority emphasizes that the complainant made his threats against the Klines "over a year *after* the instant offense" and that there is "no evidence at trial that [the complainant] had a propensity to lie or a vengeful temper towards adults prior to or upon [his] allegation toward appellant." It also emphasizes that the complainant's threats that he would falsely report the Klines generally for "molestation" were not "identical" to the complainant's specific allegations against appellant.

The majority, "in light of the remoteness in time and the dissimilarity between the specific instances of conduct toward the Klines and the charged offense," concludes that the complainant's testimony on the point had little probative value and would have been unduly prejudicial or confusing, and it overrules appellant's second point of error, relying on *Lopez v. State,* 18 S.W.3d 220 (Tex.Crim.App.2000). Likewise, it also concludes that the Klines' testimony about the threats is irrelevant, and it overrules appellant's first point of error, distinguishing *Thomas v. State,* 669 S.W.2d 420 (Tex. App.-Houston [1st Dist.] 1984, pet. ref'd).

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. The United States Supreme Court has emphasized that the "ultimate goal" of the Sixth Amendment's Confrontation Clause "is to ensure reliability of evidence" and that the Sixth Amendment "commands ... that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington,* 541 U.S. 36, 61, 124 S.Ct. 1354, 1370, 158 L.Ed.2d 177 (2004). The Texas Court of Criminal Appeals has acknowledged that the Confrontation Clause "occasionally may require the admissibility of evidence that the Rules of Evidence would exclude." *Lopez,* 18 S.W.3d at 225. In order to determine whether the Confrontation Clause demands the admissibility of certain evidence, a court must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Id.*

In *Lopez,* the complainant, a young boy, testified that the defendant compelled him to perform oral sex on the defendant numerous times over several months. *Id.* at 221. The defendant sought to impeach the complainant's credibility "with evidence that two years earlier, [the complainant] had complained to the Texas Department of Human Services that his mother had thrown him against a washing machine, and that case had been closed without any action taken against the mother." *Id.* at 221–22. The court held that the Confrontation Clause did not demand admissibility of this evidence. *Id.* at 226. In concluding that the evidence's "probative value was extremely low, and the risk that its admission would confuse the jury was high," the court emphasized (1) "the prior accusation was never shown to be false" and (2) the allegation that the complainant's mother had physically abused him had "almost nothing in common" with the complainant's accusing the defendant of forcing him to perform oral sex on the defendant. *Id.* at 225–26.

Here, in stark contrast, appellant presented evidence that the complainant, after making his complaints against appellant,

but prior to testifying in trial, threatened two witnesses with false allegations of sexual abuse. In appellant's bill of exception, Nancy Kline testified that the complainant, who was at her home, called his sister a "bitch." When Nancy attempted to discipline the complainant, he became very angry and told her that he was "going to call the cops and tell them that you're molesting me." When Nancy told the complainant that he did not know what "molest" means, the complainant defined molestation for her and "had a smirk on his face like he thought it was kind of funny." Nathan Kline testified in the bill of exception that when he refused to let his siblings out of his home to play with the complainant, the complainant threatened to tell his parents that Nathan was "molesting" him.

The majority's reliance on *Lopez* is misplaced because the Klines' testimony goes to the very core of the reliability of the complaint as a witness in this sexual assault case. The Court's holding that this evidence has "little probative value and would have been unduly prejudicial or confusing" cuts at the very heart of the Confrontation Clause, i.e., that credibility be "tested in the crucible of cross-examination." *Crawford,* 541 U.S. at 61, 124 S.Ct. at 1370. The fact that the complainant made threats about general allegations of "molestation" a year after the instant offense is of little consequence. Appellant presented evidence that the complainant, who was at the time a witness against appellant in a pending sexual assault case and very familiar with the seriousness of the allegations, was willing to threaten, and did threaten, two other individuals with false allegations of sexual assault when he lost his temper. Moreover, the Klines' testimony may also serve to prove that the complainant testified untruthfully to the trial court outside the presence of the jury when the complainant denied making any such allegations.

Likewise, the majority erroneously distinguishes this Court's previous decision in *Thomas.* In *Thomas,* an aggravated rape case, the defendant presented evidence in a bill of exception that the complainant, previously, had falsely told her mother that she had been raped. 669 S.W.2d at 422–23. We held that the trial court's "refusal to allow appellant to question the complainant on these matters before the jury amounted to a violation of his constitutional right to fully cross-examine his accuser." *Id.* at 423 (citing *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)). We emphasized that "the complainant's credibility would have been cast in doubt" by the admission of such testimony. *Id.*

The bottom line is that in such situations, as in the instant case, "the jury should [be] allowed to hear the testimony and decide on the issue of the complainant's credibility." *Id.* Here, given that the complainant's credibility was "crucial," one cannot conclude, beyond a reasonable doubt, that the trial court's error did not contribute to appellant's conviction. *See* Tex.R.App. P. 44.2(a). Accordingly, I would sustain appellant's first and second points of error and remand this case to the trial court for a new trial.