Affirmed and Memorandum Opinion filed July 15, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00104-CR

___________________

 

Larry Wayne Parker, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 208th District Court

Harris County,
Texas



Trial Court Cause No. 1081010

 



 

 

MEMORANDUM OPINION

Appellant, Larry Wayne Parker, was
convicted of aggravated sexual assault of a child.  Appellant contends the
trial court erred in denying his motion to suppress and in admitting DNA test
results.  Because all dispositive issues are settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

I.   Background

In August 2006, appellant was involved in a
relationship with Maria Velles, the mother of M.E., a thirteen-year-old female. 
According to M.E., on August 15, appellant retrieved her from school and
brought her to a hotel where they engaged in sexual intercourse.  Later that
night, appellant and M.E. returned to Velles’s house.  After appellant and Velles
had a heated argument, appellant left with M.E.  Velles contacted the
authorities, and an Amber Alert was issued for M.E. Appellant and M.E. spent
the following day at a hotel where they engaged in sexual intercourse several
times.  The next day, officers with the Houston Police Department (“HPD”)
located appellant and M.E. in downtown Houston.  Appellant was taken into
custody and consented to providing saliva and hair samples.  Officers
interviewed M.E. at a police facility.  M.E. initially denied that appellant
sexually assaulted her.  However, after being told her clothes would be
confiscated and analyzed, M.E. conceded that she had engaged in sexual intercourse
with appellant.  M.E. was brought to Texas Children’s Hospital where she was
examined and evidence was taken for a sexual-assault kit.  Test results
indicated that M.E. was HIV positive.  

In January 2007, a search warrant was issued to
obtain a blood sample from appellant.  Tests performed on appellant’s blood
revealed he was HIV positive.  Additionally, HPD sent items to an out-of-state
testing company.  DNA tests were performed to compare the DNA from appellant’s saliva
with DNA extracted from underwear M.E. was wearing at the time of the offense. 
The test results indicated that there was a high probability the DNA found on
M.E.’s underwear came from appellant.       

Appellant was indicted for aggravated sexual
assault.  The trial court denied appellant’s motion to suppress the blood-test
results and overruled his objection to the DNA evidence.  A jury convicted appellant,
and the trial court assessed punishment at life imprisonment.

II.   Motion to Suppress

            In his first
issue, appellant contends the trial court erred by denying his motion to
suppress the results of his blood test because the search warrant used to
obtain his blood was not supported by probable cause.

A.   Standard of Review
and Applicable Law

            We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  St. George v. State, 237 S.W.3d 720, 725
(Tex. Crim. App. 2007).  We view the evidence adduced at a suppression hearing
in the light most favorable to the trial court’s ruling.  Champion v. State,
919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).  The
trial court is the sole finder of fact and is free to believe or disbelieve any
or all of the evidence presented.  Id.  We give almost total deference
to the trial court’s determination of historical facts that depend on
credibility and demeanor, but review de novo the trial court’s
application of the law to the facts if resolution of those ultimate questions
does not turn on the evaluation of credibility and demeanor.  See Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  When the trial court does
not file any findings of fact, as in this case, the appellate court will review
the evidence in the light most favorable to the trial court’s ruling.  Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

            A magistrate
shall not issue a search warrant without first finding probable cause exists
that a particular item will be found in a particular location or on a particular
person.  See U.S. Const.
amend. IV; Tex. Const. art. I § 9; Rodriguez v. State, 232 S.W.3d
55, 60 (Tex. Crim. App. 2007).  The Texas Code of Criminal Procedure requires a
sworn affidavit setting out substantial facts establishing probable cause be
filed in each instance a search warrant is requested.  See Tex. Code
Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2009).  A court must look to the
totality of the circumstances to determine whether the facts set forth in the
affidavit are adequate to establish probable cause.  Ramos v. State, 934
S.W.2d 358, 362–63 (Tex. Crim. App. 1996).  In determining whether probable
cause exists, we examine only the four corners of the affidavit and must read
the affidavit in a commonsense and realistic manner.  Davis v. State,
202 S.W.3d 149, 154 (Tex. Crim. App. 2006).  Reasonable inferences may be drawn
from the facts and circumstances contained within the four corners of the
affidavit.  Id.  

The facts necessary to establish probable cause in an
affidavit are “(1) that a specific offense has been committed, (2) that the
specifically described property or items that are to be searched for or seized constitute
evidence of that offense or evidence that a particular person committed that
offense, and (3) that the property or items constituting evidence to be
searched for or seized are located at or on the particular person, place, or
thing to be searched.”  Tex. Code Crim. Proc. Ann. art. 18.01(c).  “Probable
cause ‘exist[s] where the known facts and circumstances are sufficient to warrant
a man of reasonable prudence in the belief that contraband or evidence of a
crime will be found[.]’”  Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim.
App. 2007) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

A judgment regarding probable cause cannot be based
on a mere conclusory statement made within an affidavit.  Illinois v. Gates,
462 U.S. 213, 239 (1983); Johnson v. State, 803 S.W.2d 272, 288 (Tex.
Crim. App. 1990), overruled on other grounds by Heitman v. State,
815 S.W.2d 681, 685 n.6, 690 (Tex. Crim. App. 1991).  A magistrate may presume
the reliability of information conveyed to the affiant by other officers or
citizens to determine probable cause for issuance of a search warrant.  See
Marquez v. State, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987).  When in
doubt, we defer to all reasonable inferences the magistrate could have made.  Rodriguez
v. State, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007).  

B.   Analysis

The affidavit, sworn to on January 11, 2007, by the
affiant Robert Dennard, an investigator with the Harris County District
Attorney’s Office, includes the following relevant statements:

After reviewing the
offense report of the City of Houston Police Department, . . . it is my belief
that the investigator of the report is M.J. Parrie[,] . . . an investigator
employed by the City of Houston Police Department, Juvenile Sex Crimes Division. 
I have reason to believe and I do believe that [appellant] . . . committed the
offense of Aggravated Sexual Assault of a Child against [M.E.] . . . on or
about August 16, 2006 in Harris County, Texas.

. . . . 

M.J. Parrie conducted the
investigation of the Aggravated Sexual Assault of a Child of [M.E.], which
occurred on August 16, 2006 at 405 W. Tidwell, a location in Harris County,
Texas.  [M.E.], a credible and reliable person, told M.J. Parrie that [appellant]
. . . put his penis in her vagina on August 16, 2006, at the Victoria Inn . . .
.  [M.E.] gave a videotaped statement indicating the following: on August 16,
2006, [appellant] took her to the Victoria Inn, room #109, took her clothes off
and put his penis in her vagina on two separate occasions. . . .  [M.E.] also
stated in the interview that [appellant] put his penis in her vagina
approximately 15 times during the time she has known him.  

[M.E.] was transported to the
Texas Children’s Hospital and evidence for a rape kit was collected.  The rape
kit was submitted to the Houston Police Department crime lab for further
analysis.

Affiant states
that the medical records from Texas Children’s Hospital stated that [M.E.] was
diagnosed with a sexually transmitted disease.  Because this condition is
transmitted by sexual conduct, Affiant believes that analyzing [appellant’s]
blood for the same sexually transmitted disease would constitute highly
probative evidence that [appellant] committed the above-described offense of Aggravated
Sexual Assault of a Child.

Appellant contends the affidavit “fails to meet the
second requirement of article 18.01(c) because it does not state facts that
show how or why an analysis of [his] blood would yield evidence of the alleged
offense or evidence that [he] committed the offense.”  Appellant relies on Mulder
v. State, 707 S.W.2d 908 (Tex. Crim. App. 1986), to support his
contention that the affidavit includes conclusory statements that do not
support a finding of probable cause.  

In Mulder, the Court of Criminal Appeals held
that a search-warrant affidavit to recover blood and saliva from the defendant was
insufficient to show probable cause.  Id. at 916.  The affiant expressed
that the defendant had been indicted for aggravated robbery and attempted
capital murder and that blood and saliva samples from the defendant were needed
for comparison with blood found at the crime scene.  Id.  However, no
facts were given supporting a link between the defendant and the blood found at
the crime scene, such as that the defendant had been injured during the
offense.  Id. 
Accordingly, the court held that the affidavit failed to meet the second
requirement of article 18.01(c).  Id.   

Unlike the affidavit in
Mulder, the present affidavit contains sufficient facts supporting probable
cause to believe appellant’s blood would yield evidence of the underlying
offense.  The affiant stated he reviewed Officer Parrie’s offense report. 
According to the affiant, M.E. told Officer Parrie that she and appellant had
engaged in sexual intercourse and that M.E. was transported to Texas Children’s
Hospital where a rape kit was collected and later submitted to the HPD crime
lab.  Reading the affidavit as a whole, it is reasonable to infer that the
affiant learned these facts from Officer Parrie’s offense report.  The affiant then
stated that medical records from Texas Children’s Hospital indicated M.E. had a
sexually-transmitted disease (“STD”).  It is reasonable to infer that these
records resulted from evidence procured for the rape kit and that the affiant
reviewed the records.  We determine these facts support a reasonable inference
that attaining and testing appellant’s blood for the same STD contracted by
M.E. would produce some evidence appellant engaged in sexual intercourse with
M.E.  See Tex. Code Crim. Proc. Ann. art. 18.01(c).

Appellant argues the “affiant fails to disclose the
basis for his asserted knowledge or aver any facts to show any personal
expertise in the transmission of sexual diseases.”  However, it is common
knowledge that when an STD-positive person engages in sexual intercourse with
another person, the latter may contract the disease.  Appellant further
contends the affiant did not state that appellant is the only person with whom
M.E. had sexual contact or that the STD can be transmitted only through sexual
intercourse.  However, these considerations pertain more to the evidentiary
weight of appellant’s blood-test results than whether the results constitute
evidence corroborating M.E.’s statement that appellant had sexually assaulted
her.  Finally, appellant contends that the affiant failed to specify the type
of STD involved or that testing appellant’s blood in January 2007 would yield
probative evidence that he committed a crime five months earlier.  Admittedly,
if M.E. had contracted an STD that disappears within a few weeks, testing
appellant’s blood for the same STD five months later would not be probative of his
participation in the offense.  However, it is common knowledge that a
characteristic of many STDs is their incurable or recurring nature.  Thus,
although the better practice would have been to specify the particular type of
STD and its duration (and facts supporting the affiant’s knowledge of such
things), because of the commonly-understood nature of STDs, the affiant’s
failure to so specify did not prevent the magistrate from concluding there was
probable cause to believe appellant’s blood constituted evidence of the offense. 
See Davis, 202 S.W.3d at 154 (instructing that courts must read the
affidavit in a commonsense and realistic manner); Rodriguez, 232
S.W.3d at 62 (“The issue is not whether there are other facts that could
have, or even should have, been included in the affidavit; we focus on the
combined logical force of facts that are in the affidavit, not those
that are omitted from the affidavit.”).

We conclude the affidavit provided sufficient facts
to support the magistrate’s conclusion there was probable cause to believe
appellant’s blood would yield evidence of the underlying offense.  Accordingly,
the trial court did not err in denying appellant’s motion to suppress.  We
overrule appellant’s first issue.

III.   Admission of DNA Test Results

            In his second issue,
appellant contends that the trial court erred in admitting the DNA test results
because the State failed to show the evidence was reliable pursuant to Texas
Rule of Evidence 702 and Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App.
1992).

A.   Standard of Review
and Applicable Law             

We review a trial court’s
evidentiary ruling for an abuse of discretion.  Sauceda v. State, 129
S.W.3d 116, 120 (Tex. Crim. App. 2004).  Abuse of discretion occurs when the
trial court’s decision is outside the zone of reasonable disagreement or if it
acts without reference to guiding rules or principles.  Montgomery v. State,
810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1991) (opinion on reh’g).  If the
ruling was correct under any theory of law applicable to the case, we must
uphold the trial court’s judgment.  Sauceda, 129 S.W.3d at 120.

Rule 702 provides, “If scientific, technical, or
other specialized knowledge will assist the trier of fact to understand the
evidence . . . a witness qualified as an expert . . . may testify thereto in
the form of an opinion or otherwise.”  Tex. R. Evid. 702.  Expert testimony is
admissible if (1) the expert is qualified, and (2) the testimony is relevant
and based on a reliable foundation.  See Hartman v. State, 946 S.W.2d
60, 62 (Tex. Crim. App. 1997).  To establish the reliability of scientific
evidence, the State must satisfy three criteria by clear and convincing
evidence: (1) the underlying scientific theory must be valid; (2) the technique
applying the theory must be valid; and (3) the technique must have been
properly applied on the occasion in question.  Kelly, 824 S.W.2d at 573. 
Factors the trial court may consider in determining reliability include, but
are not limited to, the following: (1) the extent to
which the underlying scientific theory and technique are accepted as valid by
the relevant scientific community, if such a community can be ascertained; (2)
the qualifications of the experts testifying; (3) the existence of literature
supporting or rejecting the underlying scientific theory and technique; (4) the
potential rate of error of the technique; (5) the availability of other experts
to test and evaluate the technique; (6) the clarity with which the underlying
scientific theory and technique can be explained to the court; and (7) the
experience and skill of the person(s) who applied the technique on the occasion
in question.  Id.  

 

B.   Analysis

            At
trial, Sara Walker, a DNA analyst with Orchid Cellmark, testified that HPD sent
her certain items to be tested.  After testifying about her background and
experience, Walker explained there are four basic parts to DNA testing:
extraction, amplification, detection, and interpretation.  According to Walker,
the DNA sample is procured during the extraction phase.  During the
amplification phase, millions of photocopies of the sample are produced in a widely-accepted
process known as polymerase chain reaction (“PCR”).  During the detection
phase, the DNA copies are loaded into a “3100” instrument:

We have an
instrument called “3100.”  It’s got little capillaries on it that are kind of
like little spaghetti noodles.  They’re little thin strips.  And we denature
the DNA so it separates out, and we load it onto this instrument.  And the DNA
will migrate through these capillaries.

During amplification, the DNA has had a fluorescent tag attached to it. 
And on this instrument, it’s going to migrate past a laser.  The laser kind of
excites the DNA and then causes that tag to fluoresce.  And it takes a picture
of that fluorescence. . . .  [B]ased on how fast it moves through the
equipment, that gives us a result.

In the final
interpretation phase, information taken by the camera is translated into a
graph for analysis.

            Before
Walker testified regarding the specific results from this case, appellant
requested a Kelly hearing outside the jury’s presence.  During the
hearing, the State elicited testimony that Walker did not detract from standard
procedure in conducting her testing and the PCR process and testing she
performed are widely accepted in the scientific community.  Appellant
cross-examined Walker regarding the PCR amplification phase.  Walker explained
that the amplification process involves twenty-eight cycles of heating and
cooling.  She further explained that the amplification machine did not output an
error message during any of the cycles and even if an error occurred, it would only
make the DNA less detectable and not affect her confidence in the results. 
Walker admitted she did not personally observe all twenty-eight cycles.

Following the hearing, appellant
specified that he was objecting to Walker’s testimony under the third
prong of Kelly.  See Kelly, 824 S.W.2d at 573 (describing third
prong as “the technique must have been properly applied on the occasion in
question”).  The trial court overruled the objection, and Walker proceeded to
testify about the results of her testing.

            On appeal, appellant
argues that “the State failed to show that the machine used to analyze the
evidence, the ‘3100,’ meets the requirements of scientific validity and reliability”
and “failed to meet its burden to show by clear and convincing evidence that
the technique applied in testing the evidence in this case has scientific
validity and reliability.”  This argument appears to fall under the second Kelly
prong.  See Kelly, 824 S.W.2d at 573 (describing second prong as
“the technique applying the theory must be valid”).  Appellant further argues
that the State failed to establish that (1) the scientific community has
accepted the validity of the 3100 instrument, (2) Walker has “the requisite
expertise on the underlying science of the DNA testing machine,” (3) scientific
literature supports, and other experts are available to discuss, the validity
of the machine, and (4) Walker had personal knowledge of whether the DNA sample
was properly heated and cooled twenty-eight times during the PCR amplification
phase.  In support of his argument, appellant relies on Hernandez v. State,
116 S.W.3d 26 (Tex. Crim. App. 2003) (per curiam).  

In Hernandez, the defendant objected to the
reliability of an “ADx analyzer” used to test his urine for the presence
marijuana.  Id. at 30.  In affirming the court of appeals’s reversal of
the defendant’s conviction, the Court of Criminal Appeals concluded, 

[T]he trial court
abused its discretion in admitting the results of ‘an ADX analyzer’ without any
showing of its scientific reliability or any reliance upon other
scientific materials or judicial opinions which had found ‘an ADx analyzer’ a
reliable methodology for determining whether a person does or does not have
marijuana in his body.

. . . .

. . . Thus, the court of appeals
was confronted with a trial record which did not support the scientific
reliability of the ADx machine.  It cannot be faulted for concluding that,
based upon the record before it, the State had failed to show the machine’s reliability. 


Id. at 30, 31
(footnotes omitted).                    

            Appellant contends Hernandez
requires reversal because the State failed to show that the 3100 instrument was
reliable.  We begin, however, with the State’s contention that appellant waived
his argument regarding the 3100 instrument because his trial objection and the
trial court’s ruling did not pertain to the reliability of the 3100 instrument.[1]  

            Admittedly,
Walker did not specifically testify about the reliability, acceptance in the
scientific community, and rate of error of, or her expertise regarding, the
3100 instrument.  However, during the Kelly hearing, appellant did not
question Walker about, and did not object to the reliability of, the 3100
instrument.  Instead, appellant questioned Walker regarding her final report and
her personal observation of the twenty-eight heating and cooling cycles of the
amplification process.  If appellant intended to complain about the
reliability of the 3100 instrument, it was not apparent from this context.  See
Tex. R. App. P. 33.1.  Thus, unlike the
defendant in Hernandez, appellant did not specifically object to the
reliability of the testing machine.  See Hernandez, 116 S.W.3d at
30.  Under these circumstances, we conclude appellant did not preserve error
regarding reliability of the 3100 instrument.[2] 


            Furthermore, to the extent
appellant argues the State failed to establish the reliability of the results
achieved by the 3100 instrument because Walker did not personally observe all
twenty-eight heating and cooling cycles of the amplification phase, we hold
that the trial court did not abuse its discretion.  Walker testified that the
amplification machine displays when an error occurs and no error displays occurred
in this case.  Additionally, she explained that even if errors had occurred
during the heating and cooling cycles, they would make the DNA less detectable
but would not affect her confidence in the test results.  Thus, despite
Walker’s failure to observe all twenty-eight cycles, the trial court did not
err in admitting the results achieved by the 3100 instrument.  Accordingly, we
overrule appellant’s second issue.

We affirm the trial court’s
judgment.  

                                                                                               

                                                                        /s/        Charles
W. Seymore                                                                                                                                    Justice

 

Panel consists of Justices Yates,
Seymore, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] The State also suggests that description of the
machine as a “3100” instrument may be the result of typographical error; the
State points to several cases from Texas and non-Texas courts where DNA testing
was performed using a “310” instrument.  Having discovered a recent case
recognizing the existence of both a 310 and 3100 instrument, we reject the
State’s suggestion.  See State
v. Bander, 208 P.3d 1242,
1244 (Wash. Ct. App. 2009)
(recognizing that the 3100 is “a later-model
genetic analyzer similar to the [310].”).    






[2] Several courts of appeals have determined that a
specific objection to scientific evidence is necessary to preserve a
corresponding appellate complaint.  See,
e.g., Kennedy v. State, 264
S.W.3d 372, 380 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d) (holding
defendant did not preserve error regarding third Kelly prong because he
failed to obtain an adverse ruling); Brown v. State, 163 S.W.3d
818, 826–29 (Tex. App.—Dallas 2005, pet. ref’d) (holding defendant failed
to “point out [his] specific complaints about the predicate [for DNA testing statistics]
to the trial court”).